# SOUTHERN COAL AND COKE COMPANY, INC. v. BEECH GROVE MINING COMPANY, INC.—381 S. W. (2d) 299.

Eastern Section. August 30, 1963.

Certiorari Denied by Supreme Court March 5, 1964.

Baker, Young, Young & Baker, Knoxville, for appellant, Beech Grove Mining Co., Inc.

Arnett, Gilbertson & Draper, Knoxville, for appellee, Southern Coal & Coke Co., Inc.

COOPER, J. This appeal is from a decree of the Chancery Court of Anderson County awarding the complainant Southern Coal and Coke Company, Inc. a judgment for $34,729.47 against the defendant Beech Grove Mining Company as indemnification for a payment made by complainant to the United States Department of Labor under the provisions of the Walsh-Healey Public Contracts Act. (41 U.S.C.A. sec. 35 et seq).

The defendant Beech Grove Mining Company is a coal mining or coal producing company. Complainant Southern

Coal and Coke Company is a corporation engaged in the sale of coal, and is the exclusive sales agent for the defendant mining company.

In May 1958, the Union Carbide Nuclear Company issued an invitation for bids to supply coal for use in the United States Atomic Energy Commission plants in Oak Ridge, Tennessee. The invitation to bid contained a condition that:

"26 (c). To the extent that this Order is subject to the Walsh-Healey Public Contracts Act as amended (41 U.S.C. 35-45), there are hereby incorporated by reference all representations and stipulations required by said Act and regulations issued thereunder by the Secretary of Labor, * * *."

The Walsh-Healey Act referred to is applicable to all contracts entered into by the United States Government, and its agencies for the manufacture or furnishing of materials, supplies, articles and equipment where the amount exceeds $10,000.00, and provides for the inclusion in the contract, among other things, of minimum wages to be paid by government contractors to their employees. To insure payment of the minimum wage standard, the Act provides that any branch or violation shall render the party responsible therefor liable to the United States of America for liquidated damages (Sec. 36), and further provides for the distribution of a list of persons or companies breaching the contract to pay minimum wages, and prohibits the awarding of future contracts to those on the list for a period of three years from the date they breached their contract. (Sec. 37).

The invitation to bid had a further "special condition" that:

"9(a). Regardless of whether the Seller is the producer of the coal to be furnished or is the sales agent of one or more producers, the Seller binds and obligates itself for the full and faithful performance of the purchase order in its entirety.

"(b) If any of the coal is to come from a producer other than the seller, each producer has signed a PRODUCERS STATEMENT and said Statement/s is a part hereof. * * *"

The invitation to bid published by the Union Carbide Nuclear Company came to the attention of the president of the defendant mining company, who contacted its sales agent, the complainant, relative to the preparation of a bid. Complainant, assisted by the president of the defendant mining company, prepared and submitted a bid showing complainant as the sales agent and that the "Coal offered in this schedule will be produced by Beech Grove Mining Co." In compliance with the terms of the invitation to bid, the defendant mining company's PRODUCERS STATEMENT was attached to the bid of complainant. For its services, complainant was to be paid a fixed sales commission, irrespective of whether or not the contract was profitable for the defendant mining company.

Subsequently, the bid of complainant was accepted and Union Carbide issued a purchase order in the approximate amount of $263,840.00 — which award, being in excess of $10,000.00, was subject to the provisions of the Walsh-Healey Public Contracts Act.

For several months, defendant was able to furnish the required coal by strip mining. During this time, those laboring in producing the coal were paid at an hourly

rate in excess of the prescribed Walsh-Healey minimum wage. In July, 1959, the vein of coal suitable for strip mining "played out," and the defendant mining company found it necessary to mine coal in "deep mines", which was more expensive.

After the contract was completed, it was determined by the United States Department of Labor that the employees of the defendant mining company working the "deep mines" were paid substantially less than the prescribed minimum wage. The United States Department of Labor made demand on complainant for payment of liquidated damages under the Walsh-Healey Act. Complainant, being a "party responsible" under the terms of its contract and the Walsh-Healey Act and being faced with the probability of being "blacklisted" and barred from entering into any future contracts with the United States Government, or its agencies, paid $34,729.47 to the United States Department of Labor, and brought this suit for restitution, by way of indemnification.

The Chancellor, after hearing the case on deposition, found that the complainant was merely a sales agency; that it placed "full confidence" in the experienced management of the defendant mining company to perform its contract; that complainant had no knowledge or control over the wages paid by the defendant mining company to its employees, and did not know of the defendant's violation of the minimum wage provisions of the Walsh-Healey Act until two months after the coal required to fulfill the terms of the contract with the Union Carbide Nuclear Company had been produced and delivered; and that complainant had been compelled to make payment to the United States Department of Labor as the result of defendant's failure to comply with the

114

provisions of the Walsh-Healey Act, and was entitled to restitution.

In assignments V and VI, the defendant contends that the evidence does not support the Chancellor's findings, but shows that complainant had knowledge that defendant was underpaying its employees and acquiesced in the action of the defendant.

The record reveals that the only witnesses who testified in this case were the principal officers of the two corporations, and that their testimony was in sharp conflict on the issue in question. Mr. D. R. Christian, the president and general manager of the defendant mining company, testified that Mr. Charles R. Griffith, president of the complainant corporation, attended a meeting of the defendant's board of directors where it was decided that the defendant would pay its employees working in the "deep mines" at a rate less than the stipulated Walsh-Healey minimum wage scale.

Mr. Charles R. Griffith testified that he attended a board of directors meeting of the defendant corporation, but that no specific wage scale was discussed or adopted. Mr. Griffith categorically denied having any knowledge that the defendant was violating the Walsh-Healey minimum wage scale in producing the coal furnished the Atomic Energy Commission plants in Oak Ridge, Tennessee until he was informed by Mr. Truman of the United States Department of Labor some two months after the contract had been completed.

The Chancellor elected to believe Mr. Griffith and, frankly, so do we. Then, too, it should be noted that, aside from the issue of credibility which we, along with the Chancellor, decided in favor of complainant,

there is the additional factor that the defendant failed to offer in evidence the minutes of the board of directors meeting, and failed to call its directors as witnesses. It is a well-settled rule of law in this state that "[w]here it is apparent that a party has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, it may be presumed that if the more satisfactory evidence had been given it would have been detrimental to him and would have laid open deficiencies in and objections to, his case, which the more obscure and uncertain evidence did not disclose." Stevens v. Moore, 24 Tenn.App. 61, 139 S.W.(2d) 710, 717.

Assignments V and VI are overruled.

The defendant, in assignments I through IV, insists that the complainant's "liability to the government for damages it seeks to recover stems from its breach of a 'non-delegable statutory duty to assure compliance with the Act', and, consequently, under basic and fundamental principles of equity jurisprudence, the [complainant] is not entitled to the relief sought, having based its cause of action on its own violation of a determinative statute."

The parties recognized and stipulated in the trial court that "the defendant * * *, by virtue of being the producer of the coal in question, was obligated to the government to pay its employees the stipulated Walsh-Healey minimum wage scale. The complainant * * *, by virtue of contracting with the government agency, was under a non-delegable duty to the government to assure full compliance with all contract provisions, one of which being that the Walsh-Healey minimum wage scale would

be paid." See contract provision set out; Sections 32-35, Rulings and Interpretations, No. 3, of the U. S. Department of Labor; In re Cardinal Fuel and Supply Company, 15 W.H.Cases 120.

■ Consequently, complainant and defendant were jointly and severally liable to the United States Government for defendant's failure to pay its employees the stipulated Walsh-Healey minimum wage scale.

The issue in this case, however, is not which party, or parties, was liable to the United States Government as the result of the defendant's failure to pay the stipulated minimum wage scale, but is, as between the parties, who should bear the brunt of the payment to the government.

■ As a general rule, "a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct." Restatement of Restitution, Chap. 3, Sec. 76, p. 331.

■ The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former. See L. E. Talcott & Sons, Inc. v. Aurora Corporation, 176 F.Supp. 783.

In the present case, the defendant, as the producer of the coal, had the primary duty to pay its employees the prescribed Walsh-Healey minimum wage scale. The defendant knowingly and wilfully violated this duty, making both complainant and itself liable to the United

States Government for damages equal to the amount the defendant underpaid its employees. Further, as the result of its wilful breach of the duty to pay the minimum wage scale, the defendant enriched itself to the extent of its admitted underpayment. The complainant, being on a fixed sales commission, did not share in any way in the money the defendant wrongfully withheld from its employees.

■ We think, under these circumstances and the general rule stated above, equity and justice demand that the defendant bear the brunt of the payment to the United States Government, and that the Chancellor correctly held that complainant was entitled to restitution of the payment it made.

■ The defendant argues that the complainant, being burdened with a non-delegable duty to assure full compliance with the provisions of the Walsh-Healey Act, is barred from recovering in a court of equity by its failure to take affirmative steps to compel the defendant to pay its employees the stipulated minimum wage scale, citing the equitable principle: "He who comes into equity must come with clean hands." We find no merit in this insistence.

In describing the circumstances which will render the hands of a litigant unclean and deprive him of the relief granted in a court of equity, the Court in Christians v. Town of East Ridge, 12 Tenn.App. 101, quoting from 21 C.J., Sec. 165 [now 30 C.J.S. Equity sec. 95, p. 1019] stated:

" 'Any willful act in regard to the matter in litigation which would be condemned and pronounced wrongful

by honest and fairminded men, will be sufficient to make the hands of the applicant unclean.' " 12 Tenn. App. 101, 112.

\* \* \* \* \* \*

"These two cases from our own courts furnish a chart for the guidance of enlightened conscience, and are supported upon a foundation of what can and should be regarded as a sound public policy of promoting honesty and fair dealing, and of discouraging subterfuge and trickery. Conscience does not defile itself in sanctioning the enforcement of a just and clean cause of action, even though attempts may have been made to improperly influence its favor; but when it actively interposes its aid to secure the fruits of unfair and unscrupulous dealings, it becomes a party to the scheme and encourages the practice of devious ways that corrupt the place of its habitat." 12 Tenn.App. 101, 115.

Pomeroy on Equity describes the litigant with unclean hands as the one who has acted unconscientiously or inequitable. See 5th Ed., Vol. 2, Sec. 399, p. 94. Gibson's Suits in Chancery, Vol. 1, Sec. 51, p. 63 refers to a litigant with unclean hands as being one "who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction."

If we concede for the purpose of this opinion that the complainant was in error in placing its confidence in the management of the defendant company and should have taken affirmative steps to check constantly on the defendant to see that it performed its duty, the failure to act on the part of the complainant, in our opinion, does not

fit into any of the categories condemned and pronounced wrongful by honest and fairminded men, and, consequently, does not justify the application of the ''clean hands'' doctrine.

Assignments I through IV are overruled.

All assignments of error having been overruled, the decree of the Chancellor is affirmed. The costs of the appeal are adjudged against the defendant and its surety.

McAmis, P. J., and Earnest R. Taylor, Special Judge, concur.