The **CONTINENTAL INSURANCE COM-
PANY et al., Appellants,**

v.

**CITY OF KNOXVILLE, Appellee.**

Supreme Court of Tennessee.

Nov. 20, 1972.

Jerry A. Farmer, Knoxville, for appellants; Poore, Cox, Baker, McAuley, Ray & Byrne, Knoxville, of counsel.

Norman B. Jackson, Knoxville, for appellee; Marsh, Thompson & Jackson, Knoxville, of counsel.

## OPINION

CHATTIN, Justice.

This appeal is from a decree of the Chancellor awarding indemnity against appellants in favor of the appellee.

The facts were stipulated. On March 22, 1967, Mrs. Martha B. Rose sustained personal injuries when she tripped and fell on a metal trapdoor located in the sidewalk at 304 Wall Avenue in the City of Knoxville. The trapdoor constituted a part of the sidewalk and protruded above it.

The trapdoor provided access to the basement of the building located at 304 Wall Avenue, and had been installed for the exclusive benefit of the building. At the time of the accident the building was under a lease to Leasing Company No. 1, Inc., from the owners of same.

Mrs. Rose and her husband filed suit in Circuit Court against the City and Leasing in November 1967. For the consideration of payment to them of $4,250.00, they gave Leasing a covenant not to sue and dismissed the suit as to Leasing.

As a result of the trial, Mrs. Rose was awarded damages in the amount of $10,000.00 and Mr. Rose the sum of $5,000.00. The trial judge suggested a remittitur of $2,500.00 in each case, which was accepted.

Thereafter, the City made a motion for a reduction of judgment pursuant to the provisions of T.C.A. 23–3105, a part of the Uniform Contribution Among Tort-Feasors Act.

The motion sought a credit of the $4,250.00 paid by Leasing against the judg-ment against the City. The trial judge overruled the motion on the ground it came too late since it was made after the motion for a new trial.

The parties appealed. The Court of Appeals restored the amount of Mrs. Rose's remittitur and then deducted the $4,250.00 paid for the covenant not to sue from the judgments by sustaining the City's assignment of error the trial judge erred in refusing to grant its motion for a reduction in judgment.

One-fifth of the $4,250.00 was deducted from Mr. Rose's judgment of $2,500.00 and four-fifths from Mrs. Rose's judgment of $10,000.00.

It was stipulated that Leasing surrendered its charter on February 15, 1968; and that pursuant to T.C.A. 48–516 trustees were appointed to hold the assets of the corporation for the benefit of its creditors and stockholders.

As a result of the judgments recovered by Mr. and Mrs. Rose against the City, this suit was instituted against Leasing, the named trustees and Continental Insurance Company, the public liability insurance carrier for Leasing at the time of the accident, for indemnity or in the alternative contribution.

The Chancellor found the City entitled to indemnity. Appellants have perfected an appeal and assigned five alleged errors.

We will consider the first two assignments jointly. The first assignment insists the Chancellor erred as a matter of law in overruling Continental's demurrer on the ground no cause of action had been stated against it.

■ The second assignment contends the Chancellor erred as a matter of law in overruling Leasing's demurrer on the ground its corporate existence was dissolved and liquidated on February 15, 1968, and it was not subject to suit. We disagree. The pertinent statute at the time of

the dissolution was T.C.A. Section 48–514, which provides:

"The filing of said certificate in the office of the secretary of state shall operate as a surrender to the state by the corporation of all its corporate franchises and privileges, and shall have effect to annul the charter of said corporation, and its right to continue the corporate business shall thereupon cease and determine; provided, however, that the rights of the creditors of said corporation to the satisfaction of their debts out of the corporate assets shall not be prejudiced thereby; and provided, also, that the corporation shall continue to exist for the purpose of winding up its affairs so long as may be necessary for that purpose, but no longer, or otherwise."

This statute operates to prolong the life of the corporation until its corporate affairs are completed. Leasing existed for the purpose of this suit, notwithstanding its charter had been surrendered. The statute makes it clear a corporation may not avoid its obligations by simply dissolving.

Although trustees were appointed to wind up the corporate affairs, they act in the place and stead of the board of directors and officers of the corporation, it was not a duplication of parties. The corporation was in existence for the purpose of liquidating its affairs.

The second assignment of error is overruled.

■ It is argued in support of the first assignment by Continental that only a party to the insurance policy can institute an action on it. Therefore, it is argued this suit is a direct action by the City for the alleged failure of Continental to perform its obligation under the policy, although the City was not a party or a third party beneficiary thereunder. We must disagree with this argument.

This suit is not a direct action against Continental to perform its obligation under its policy. The parties stipulated and the Chancellor found the insurance policy was an asset of Leasing. The action is by a party secondarily liable to recover indemnity from the assets of the party (Leasing) primarily liable for the same obligation. The assignment is overruled.

We will consider the third and fifth assignments together. The third assignment insists the Chancellor erred, as a matter of law, in overruling the demurrers of each appellant on the ground the City is not entitled to recover indemnity after having accepted a reduction of judgment pursuant to T.C.A. Section 23–3105 in the original suits of Mr. and Mrs. Rose.

The fifth assignment contends the Chancellor erred, as a matter of law, in finding the City was not estopped from seeking indemnity in this action because of its acceptance and reliance upon the Uniform Contribution Among Tort-Feasors Act in the original suits.

As hereinabove stated, the Court of Appeals allowed the City's motion for a reduction of the judgments in the original suits.

■ Appellants argue since there was a reduction of the judgments, the City should be estopped from recovering indemnity.

We agree with the Chancellor there is no evidence in the record to indicate appellants relied to their detriment on the action taken by the City; and that a good argument exists that the City was required, in order to mitigate damages, to seek reduction of the judgments in the amount paid by Leasing for the covenant not to sue.

Had the City paid the entire judgment of $12,500.00 and obtained indemnity of that amount, the Roses would have been the beneficiaries of a windfall of $4,250.00 which would be unjust.

Since the City obtained only partial relief because of the reduction of the judgments, there is no reason to prevent it from recovering complete relief by way of indemnity.

Secondly, the Uniform Contribution Among Tort-Feasors Act provides in part:

"This chapter does not impair any right of indemnity under existing law." T.C.A. Section 23–3102(f)  *  *  *

"When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) or two (2) or more persons liable in tort for the same injury or the same wrongful death;

*     *     *     *     *     *

(b) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor." T.C.A. Section 23–3105.

■ The foregoing makes it clear the relief afforded under the Uniform Contribution Among Tort-Feasors Act does not estop the party afforded the relief from later enforcing a right of indemnity.

Both assignments are overruled.

Appellants' fourth assignment of error contends the Chancellor erred, as a matter of law, in finding the City is entitled to indemnity under the record.

In Southern Coal and Coke Co. v. Beech Grove Mining Co., 53 Tenn.App. 108, 381 S.W.2d 299 (1963), the Court said:

" *  *  * a person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

■ While the courts of this State have generally made a determination as to whether or not the one seeking indemnity was guilty of active negligence, the rule seems to be that only one guilty of passive rather than active negligence can recover indemnity. Cohen v. Noel, 165 Tenn. 600, 56 S.W.2d 744 (1933); Graham v. Miller, 182 Tenn. 434, 187 S.W.2d 622 (1944).

■ The Chancellor took note of this rule in his memorandum opinion, but properly went beyond it due to the particular circumstances of this case. He said:

"I think that there was a distinction of active and passive negligence here, if that is necessary for the quantum to give the city the right to recover under the indemnity. But I would hold, regardless of the active and passive question, that inasmuch as the trapdoor and the manner in which it caused the injury was for the exclusive benefit of the landowner, that as between the two that should put the burden of indemnifying the city upon the landowners."

We think legal justification, as well as logic, exists for concurring with the Chancellor and that the primary responsibility should not be placed upon the City under the particular facts of this case.

In determining the primary responsibility in this case, the following ordinances of the City are pertinent:

"It shall be the duty of the abutting property owner or agent of any house or property to maintain or repair sidewalks or driveways adjoining the property." Knoxville City Ordinance, Section 36–6.

"All cellar doors upon any of the streets, parks, or squares of the city shall be of strong material, and be uniform and flush with the pavement or sidewalk." Knoxville City Ordinance, Section 36–66.

The City contends the ordinances are sufficient to effectively impose the primary responsibility for the maintenance of the

trapdoor on Leasing. However, the appellants cite numerous cases which state the primary responsibility for safe streets rests with the municipality and this duty cannot be shifted by ordinance to the abutting landowners.

Harbin v. Smith, 168 Tenn. 112, 76 S. W.2d 107 (1934); Hale v. City of Knoxville, 189 Tenn. 491, 226 S.W.2d 265 (1949); City of Knoxville v. Ferguson, 34 Tenn.App. 585, 241 S.W.2d 612 (1951); City of Winchester v. Finchum, 201 Tenn. 604, 301 S.W.2d 341 (1957).

We are of the opinion all these cases are inapplicable under the facts of this case.

Since the artificial structure, a trapdoor, was placed in the sidewalk exclusively for the benefit of the abutting landowner and not the City, it is only just that the City be reimbursed. This is not an attempt to burden the abutting landowner with the responsibility of general repairs; the abutting landowner's burden here is only for that which exists exclusively for his benefit, the trapdoor.

This is in accordance with the general rule as stated in 39 Am.Jur.2d, Highways, Streets, and Bridges, Section 383, page 777:

> "Where an adjoining property owner, for the exclusive benefit of his own property, places in a public street or sidewalk some artificial structure and the public authority is compelled to pay compensation in damages to a member of the public injured thereby, the public authority may recover the amount so paid from the property owner by way of indemnity."

Accordingly, we overrule the fourth assignment of error.

The decree of the Chancellor is affirmed. Appellants will pay the costs.

DYER, C. J., HUMPHREYS and Mc-CANLESS, JJ., and WILSON, Special Judge, concur.