**WOLFF & MUNIER, INC. and Controltec, Inc., Plaintiffs–Appellants,**

v.

**PRICE–WATERHOUSE, Donald Schuppe, John Stephen Davis, and Steven Joseph King, Defendants–Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 9, 1991.

Application for Permission to Appeal Denied by Supreme Court May 6, 1991.

Dean White, Memphis, for plaintiffs-appellants.

David Wade, Memphis, Sidney Davis, and Ronald B. Hauben, New York City, for defendant-appellee Price Waterhouse.

CRAWFORD, Judge.

Plaintiffs, Wolff & Munier, Inc. and Controltec, Inc. (hereinafter referred to collectively as Plaintiffs or WM) appeal from the order of the chancery court dismissing their complaint against the defendant, Price Waterhouse (hereinafter referred to as Defendant or PW). Although PW's motion was filed pursuant to Rule 12.02, Tenn. R.Civ.P., it appears that matters outside the complaint were considered by the court, thus we will treat and dispose of the motion as a motion for summary judgment.

There is no dispute concerning the material facts. G.H. Avery Company (GHA) was a Tennessee corporation engaged in the temperature control business. Virtually all of its stock was owned by Charles Samuelson. In December, 1985, WM agreed to and did acquire all of the outstanding stock of G.H. Avery & Company from Samuelson. GHA was merged into another WM owned company, Controltec, Inc., in 1988. For the purposes of considering issues involved herein, Controltec, Inc., is in the same position as WM and therefore the two will be referred to collectively.

As part of the GHA acquisition, WM entered into an employment contract with Samuelson engaging him to continue the management of the daily operations of the company. In mid 1987, WM terminated its agreement with Samuelson and a lawsuit was filed by Samuelson against WM and GHA for breach of the employment contract. WM and GHA filed a counter claim charging Samuelson with fraud in connection with inducing the acquisition of GHA by WM.

In its counterclaim, WM asserted that Samuelson had fraudulently induced it to purchase GHA in 1985 by providing WM with financial statements that intentionally and fraudulently misrepresented the financial condition of GHA. WM and GHA al-

leged that they suffered financial losses as a result of their reliance upon Samuelson's fraudulent misrepresentations. After a trial, the chancery court entered a final judgment on March 1, 1989, against Samuelson in favor of WM in the amount of $4,000,000 compensatory damages and $200,000 punitive damages and a judgment for $335,-460.00 in favor of Controltec.

On February 21, 1989, WM and Samuelson, in anticipation of the entry of the judgment by the court against Samuelson, entered into a settlement agreement by the terms of which Samuelson agreed to pay WM a total of $175,000 in a series of monthly payments. In exchange WM agreed to "refrain from executing ... or to in other manner collect upon the judgment entered in Shelby County Chancery Court docket number 94652–3." The agreement further provided that upon Samuelson's final payment of the settlement amount, WM agreed to execute a release in favor of Samuelson completely releasing him from further liability "for any cause of action relating to the transactions involving the purchase of GHA by WM, including but not limited to any judgment entered under Shelby County Chancery Court docket number 94651–3." The agreement stipulated, however, that the release was to be executed only in the event that Samuelson paid the $175,000 and was in compliance with the other terms of the agreement. At the time of trial, Samuelson had paid $10,-000 pursuant to the agreement.

After execution of the settlement agreement with Samuelson, Plaintiff commenced the instant case against PW in July, 1989. The complaint alleges that Samuelson retained PW to perform general accounting tax return preparation and auditing services for GHA for the fiscal years ending August 31, 1984, and August 31, 1985. PW conducted an audit of GHA for the fiscal year 1984 and 1985 and also prepared Samuelson's personal tax returns for those years. In late 1984, GHA was having a substantial cash flow problem and PW assisted in the preparation of a circular which was used as an inducement to attract outside investors to the company. The com-

plaint alleges that this circular contained an inaccurate representation of the existing financial condition of GHA and grossly overstated projections for the future business of GHA. The complaint avers that PW knew or in the exercise of reasonable care should have known of these inaccuracies. WM became interested in investing in GHA in large part due to the financial information prepared and furnished by PW and thereafter on December 12 entered into an acquisition agreement. The agreement required Samuelson to furnish information concerning GHA's financial condition and included a requirement that certain documents be furnished WM which included:

a) a financial statement bearing an unqualified opinion by PW showing a net worth of GHA of not less than $200,000.00 as of the close of its fiscal year August 31, 1985, as required by section 2.1.3 of said Acquisition Agreement;

b) an interim financial statement for the three months ended November 30, 1985;

c) a statement from PW reflecting that it had no reason to believe that during the period from September 1, 1985, to and including November 30, 1985, there had been any material and adverse change in GHA's financial position resulting from operations as required by Section 2.4.9 of said Acquisition Agreement;

d) copies of GHA's audited balance sheets as of August 31, 1984 and 1985 and its related statement of earnings and retained earnings for the fiscal years then ended and including in each case the related schedules and notes, all of which were to be certified by PW as fairly representing the financial position of GHA and the results of its operations for the fiscal periods then ending and in conformity with generally accepted accounting principles consistently applied all as provided in Section 4.9 of said Acquisition Agreement. (R.4).

The complaint further alleges that PW contracted with GHA to investigate, audit, review and otherwise verify the accuracy of the documents required by the Acquisition Agreement. Plaintiff avers that the documents were not in fact true representations of the financial condition of GHA. Plaintiff alleges that PW was well aware of the negotiations for the acquisition of the company and was aware that WM was relying upon the information furnished by PW. The complaint further avers that PW failed to use the requisite degree of professional skill in preparing and furnishing the various documents and that this caused a loss to WM. The complaint avers that PW breached its contract with GHA and was further guilty of negligence in its performance and that had WM known the true financial condition of GHA it would not have entered into the agreement to purchase the company.

In response to the complaint, PW filed a motion to dismiss in which it states:

... Under both the Uniform Contribution Among Tort–Feasors Act, T.C.A. § 29–11–101, et seq. and the common law, plaintiff's settlement agreement with Samuelson precludes them from recovering against all the defendants in this action.

Without stating a reason, the trial court entered an order of dismissal of plaintiff's action which resulted in this appeal.

The first issue presented for review is whether the chancellor erred in granting defendant's motion to dismiss relating to tort liability.

PW asserts that pursuant to T.C.A. § 29–11–105(a) (1980), a part of the Uniform Contribution Among Tort-feasors Act, the trial court correctly dismissed the case. T.C.A. § 29–11–105(a) provides:

(a) When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death:

(1) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(2) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

\* \* \* \* \* \*

PW argues that pursuant to this statute, it is entitled to credit for the compensatory damages in the amount of $4,335,460.00 which it contends is the "amount stipulated" in the Samuelson settlement because that is the liability that was actually released or will be released when Samuelson complies with the terms of the settlement. It further asserts that plaintiff's damages are limited to the amount of the final judgment entered against Samuelson because the plaintiffs are estopped from now claiming more damages than they claimed in their initial suit and for which judgment was entered against Samuelson.

 Plaintiffs first insist that defendant's motion to dismiss is premature. They argue that the agreement is clearly a contingent agreement based upon the performance of conditions precedent which must be met before the four million dollar plus judgment will be released. They assert that there is no release of the judgment at the present time and there is no certainty that a release will be executed. From our examination of the settlement agreement, we must agree with the plaintiffs. The settlement agreement declares that it is anticipated that a judgment of $4,335,460.00 will be entered in favor of WM and that the parties desire to resolve their differences and settle the matters by virtue of the settlement agreement. The settlement agreement then provides for the payment by Samuelson of $175,000.00 to WM which is evidenced by a promissory note calling for payment as set out in the agreement. The agreement provides that when the note is paid in full, WM will execute a release in favor of Samuelson releasing him from any further liability to WM including the judgment to which we heretofore referred. The agreement provides for various obligations on the part of Samuelson and specifically states:

\* \* \* \* \* \*

The parties hereto agree that in the event that CHS shall default in the terms of this agreement WM ... shall be free to pursue collection of their judgment ... in the aforementioned Chancery Court litigation ... without the necessity of further judicial proceedings. Events of default under this agreement shall including the following:

\* \* \* \* \* \*

Clearly under the terms of the agreement there is no release of the judgment at the present time. The only thing in effect at the present time is an agreement by WM not to execute on the judgment while Samuelson is not in default of the terms of the settlement agreement. Therefore, the order of the trial court is vacated and the case is remanded for such further proceedings as may be necessary.

Since this case will be remanded to the trial court, we should briefly address defendant's arguments in this appeal. In so doing we are called upon to construe the Uniform Contribution Among Tort–Feasors Act in relation to the facts of this case.

In *City of Caryville v. Campbell County*, 660 S.W.2d 510 (Tenn.App.1983), this Court said:

The rule of statutory construction to which all others yield is that the intention of the legislature must prevail. *City of Humboldt v. Morris*, 579 S.W.2d 860, 863 (Tenn.App.1978); see *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn.1975). Legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language. *Worrell v. Kroger Company*, 545 S.W.2d 736, 738 (Tenn.1977); see *City of Lenoir v. State ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn.1978).

It is the duty of the court to reconcile inconsistent or repugnant provisions of a statute and to construe a statute so that no part will be inoperative, superfluous, void or insignificant. It must give effect to every word, phrase, clause and sentence of the act in order to achieve the

Legislature's intent, and it must construe a statute so that no section will destroy another. *Tidwell v. Collins, supra* at 676–677.

660 S.W.2d at 512.

It is undisputed that the terms of the settlement agreement before the Court in this case do not release PW, and that T.C.A. § 29–11–105(a)(1) would require, if PW is a joint tort-feasor, a deduction from the claim against PW "to the extent of any amount stipulated by the release or the covenant, or in the amount of consideration paid for it, whichever is the greater; ..."

■ The dispute between the parties is the interpretation of the statute as to whether PW is entitled to credit for the amount of the judgment released or the amount stipulated in the release instrument itself. In *Buckner v. Cocke County*, 720 S.W.2d 472 (Tenn.App.1986), this Court said:

... The purpose of the Uniform Act is to establish a right of contribution where two or more persons are jointly or severally liable in tort and is not intended to operate so as to reduce the amount of damages required to fully compensate a claimant for his injuries and losses; moreover, the Act mandates in establishing the right of contribution principles of equity shall apply. T.C.A., § 29–11–103.

720 S.W.2d at 473.

From this announced intention and giving the words of the statute their usual and ordinary meaning we reach the conclusion that the amount of credit due other tort-feasors is determined by sums which move into or are stipulated as moving into the injured party and not the relief received by the released tort-feasor. By this we mean the credit is not the amount of the total judgment or damages that the agreement purports to settle, but is the benefit, actual or potential, whichever is greater, received by the injured party. The amount relinquished by the injured party is not the determinative figure. To illustrate by using this case, the credited amount is not the $4,335,460.00 which is the total judgment, nor is it the $10,000.00 that Samuelson has paid on the settlement. The credited amount is the $175,000 set out in the agreement as the amount the wronged part would accept to settle its claim.

Neither party has cited a case directly on point concerning this precise question, nor has our research revealed any such case. We have read and considered the cases cited by counsel and find that they are distinguishable. We believe our interpretation of the act is in keeping with the express purpose of the act.

From our review of plaintiffs' complaint a cause of action against defendant is alleged and the chancery court erred in holding that the Uniform Contribution Among Tort–Feasors Act precludes plaintiffs from proceeding.

■ Defendant also argues that the complaint against it should be dismissed under the common law doctrine of circuity. First, we note that the inconclusive nature of the settlement agreement is equally applicable to this argument of the defendant. However, we will address this argument further. Although T.C.A. § 29–11–102 (1980) establishes a right of contribution among tort-feasors, the common law right of indemnity is left unimpaired. Subsection (f) of this statute states:

(f) This chapter does not impair any right of indemnity under existing law. Where one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

The rule has long been established in this state that one guilty of only passive rather than active negligence can recover indemnity. *Continental Ins. Co. v. City of Knoxville*, 488 S.W.2d 50 (Tenn.1972); *Cohen v. Noel*, 165 Tenn. 600, 56 S.W.2d 744 (1933). Defendant argues that if it is not entitled to contribution it is entitled to indemnity. Defendant further argues that WM's release to Samuelson impairs its right of indemnity because it would be foreclosed from getting a judgment against Samuelson. In this regard it relies upon *Craven*

*v. Lawson*, 534 S.W.2d 653, 656 (Tenn. 1976). We believe defendant's reliance on *Craven* is misguided. In *Craven*, an action was brought against a driver and an owner of an automobile and the allegations against the owner were based strictly on the doctrine of respondeat superior. While the court discussed indemnity in general, the court sustained the correctness of the trial court's action in discharging the owner from any derivative liability predicated on a master/servant or principal/agent relationship when the driver had been released. The distinguishing feature of this case is that the master was only vicariously liable and was, in no sense, independently negligent.

The case before us presents a somewhat different set of facts. Should there be a recovery against PW it would based upon direct and proximate negligence on the part of PW albeit perhaps passive negligence as opposed to Samuelson's intentional act.

While our Supreme Court did not specifically address the precise issue, we note that in *Continental Ins. Co. v. City of Knoxville*, 488 S.W.2d 50 (1972), the court affirmed a judgment for indemnity where the indemnitor had previously settled with the injured party and received a covenant not to sue. In this case the injured plaintiff filed suit against the City of Knoxville and the proprietor of a business seeking damages for personal injuries sustained when she tripped and fell on a metal trap door located in the sidewalk at the business location. The proprietor of the business paid the injured plaintiff $4,250.00 and received a covenant not to sue. The case went to trial as to the city and a judgment was obtained in the amount of $15,000.00 for both plaintiffs. Without going into further details, the instant suit was brought by the city against the insuror of the business for indemnity. The judgment of the trial court granting indemnity was affirmed by the Supreme Court. Defendant has cited no case to this Court which holds that the right of indemnity is extinguished by a release between the indemnitor and the injured person other than cases involving liability predicated solely on respondeat superior. We do not believe that the doctrine of circuity would apply to the case before us.

■ Summary judgment is to be rendered by a trial court only when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.03 (1984). In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that a summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W.2d 420 (Tenn.App.1985); *Bennett v. Mid–South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983).

As we have heretofore noted, the allegations of the complaint do not establish that the defendant should be awarded a judgment as a matter of law and from the record before us there are disputed issues of material fact which militate against the granting of summary judgment.

Accordingly, the order of the trial court dismissing plaintiffs' complaint is vacated and this case is remanded to the trial court for such proceedings as may be necessary. Costs of the appeal are assessed against appellee.

HIGHERS and FARMER, JJ., concur.