IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 2, 2000 Session

# FIRST NATIONAL BANK OF CHICAGO, ET AL. v. CUMBERLAND BEND INVESTORS, L.P., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 98-789-III       Ellen Hobbs Lyle, Chancellor**

---

**No. M2000-00001-COA-R3-CV - Filed December 19, 2002**

---

This appeal involves a dispute between a buyer and a seller of commercial property in Nashville over the buyer's obligation to indemnify the seller for legal expenses incurred in a successful defense of a suit for commissions filed by the former manager of the property.  The seller filed suit in the Chancery Court for Davidson County seeking to recover its legal expenses from the buyer under the theories of indemnification and contribution.  The trial court granted the buyer's motion for summary judgment and dismissed the complaint because the seller failed to prove that it had an express or implied right to indemnification and because, as a matter of law, contribution was inappropriate under the circumstances.  We concur and, therefore, affirm the trial court's dismissal of the complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Steven C. Douse, Nashville, Tennessee, for the appellant, The First National Bank of Chicago.

Gary S. Rubenstein, Nashville, Tennessee, for the appellees, Cumberland Bend Investors, L.P.; River Investors, Inc.; William Moss Wilson; and Debra C. Stanton.

## OPINION

## I.

The First National Bank of Chicago ("FNBC") is the trustee of a group trust that concentrates on pension and profit-sharing plan investments.  One of the funds in the trust group, Fund F, invested in real estate.  From October 1982 through November 1992, Fund F's holdings included an office building complex located at 215-259 Cumberland Bend Boulevard in Nashville.  FNBC contracted with the Edwin B. Raskin Company ("Raskin") to manage the office buildings.  The contract entitled Raskin to a commission on all consummated leases for space in the property.

In March 1988, the General Services Administration ("GSA") leased 37,600 square feet of property in the complex for a ten-year period expiring April 30, 1998.[1] The lease gave GSA the right to terminate the lease after five years upon ninety days notice. For this reason Raskin was initially paid commissions for only the first five years of the lease. FNBC's contract with Raskin terminated on June 30, 1991, and Centennial, Inc., its successor leasing agent later negotiated another amendment to the GSA lease increasing the leased space to 54,071 square feet and extending the non-cancellation period to March 31, 1996.

In October 1992, FNBC sold the property to Cumberland Bend Investors, L.P. ("Cumberland Bend"). One of Cumberland Bend's partners was concerned about Raskin's claim for future commissions. To allay these concerns, FNBC prepared a separate written agreement dated November 18, 1992, to indemnify Cumberland Bend for any liability attributable to Raskin's claim. This agreement provided:

> The Claim indemnified against hereby is limited to leasing commissions arising out of the extension and expansion of the Lease which was exercised on March 26, 1992, and the Claim does not include commissions arising out of any future extension or expansion of the Lease (all such commissions being payable by [the parties] or their Assignee.)[2]

The parties signed the letter agreement at the closing on November 30, 1992. At the same time, FNBC's lawyers informed Cumberland Bend's principals that if the GSA stayed in the complex past March 31, 1996, Cumberland Bend, rather than FNBC, would "be responsible for any commission claims related to [the extension of the lease]."

Raskin later claimed a right to commissions for the period from April 30, 1993 to March 31, 1996. FNBC settled this claim. Thereafter, Raskin asserted another claim for commissions for the period from April 1, 1996 through November 30, 1998 because GSA had not exercised its right to cancel the lease. FNBC called upon Cumberland Bend to respond to the latest Raskin claim and indemnify accordingly; however, Cumberland Bend declined. Thereafter Raskin filed suit against both FNBC and Cumberland Bend seeking to recover additional commissions. Raskin's suit was later dismissed for failure to state a claim upon relief can be granted, and the judgment of dismissal later became final.

On March 16, 1998, FNBC filed suit against Cumberland Bend in the Chancery Court for Davidson County seeking to recover the legal expenses it had incurred defending against the Raskin lawsuit. The trial court granted Cumberland Bend's motion for summary judgment and dismissed

---

[1] The lease was later extended through November 30, 1998, and the amount of space was increased to 48,430 square feet.

[2] The attorney for Cumberland Partners undertook to clarify the conditions of the indemnification by letter to FNBC's attorney, stating that the indemnification "would not encompass any broker claims after 1996 or the potential completion of the existing lease of the GSA . . .."

FNBC's indemnification and contribution claims. On this appeal, FNBC asserts that Cumberland Bend was not entitled to a judgment as a matter of law dismissing its contractual and common-law indemnity claims or its contribution claims.

## II.
### THE STANDARD OF REVIEW

Granting a summary judgment is warranted in virtually any civil case where the moving party demonstrates that no genuine issues of material fact exist and that it is entitled to a judgment as a matter of law. *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Armoneit v. Elliott Crane Serv.*, 65 S.W.3d 623, 627 (Tenn. Ct. App. 2001). Because a summary judgment involves an issue of law rather than an issue of fact, *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 889 (Tenn. 2002), an order granting a summary judgment is not entitled to a presumption of correctness on appeal. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

Appellate courts do not employ the standard of review in Tenn. R. App. P. 13(d) when reviewing an order granting a summary judgment. *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997); *Estate of Kirk v. Lowe*, 70 S.W.3d 77, 79-80 (Tenn. Ct. App. 2001). Rather, we determine for ourselves whether the moving party has satisfied the requirements of Tenn. R. Civ. P. 56. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cantrell v. DeKalb County*, 78 S.W.3d 902, 905 (Tenn. Ct. App. 2001). In this process, we must consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in the nonmoving party's favor. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 342 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

## III.
### FNBC'S INDEMNITY CLAIMS

FNBC does not assert that the facts that are material to the issues in this case are disputed. It concedes that the November 18, 1992 letter agreement does not contain specific indemnification language. Rather, it insists that its right to indemnification for its legal expenses should be implied from the totality of the circumstances. FNBC's theory appears to be that it is entitled to some sort of reciprocal right to indemnification after March 31, 1996 by Cumberland Bend in return for its agreement to indemnify Cumberland Bend for Raskin's pre-March 31, 1996 claims.

The concept of indemnification embodies the principles of restitution and unjust enrichment. 2 George Palmer, *The Law of Restitution* § 10.6, at 410-11 (1978). It recognizes that each person is responsible for his or her own legal wrongdoing and, therefore, that each person is liable to any other person who is required to pay damages that he or she should have paid. *Houseboating Corp. of Am. v. Marshall*, 553 S.W.2d 588, 589 (Tenn. 1977); *Southern Coal & Coke Co. Inc. v. Beech Grove Mining Co., Inc.*, 53 Tenn. App. 108, 116, 381 S.W.2d 299, 302 (1963); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 26 (Tentative Draft No. 2, 2002).

An indemnity obligation may be either express or implied. An express indemnity obligation arises from a contract; while an implied indemnity obligation, whether equitable or contractual, is imposed by law without the consent or agreement of the parties. Courts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship, *Lusk v. Jim Walter Homes, Inc.*, 648 S.W.2d 935, 939 (Tenn. 1983); *Houseboating Corp. v. Marshall,* 553 S.W.2d at 589, or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other party's. *Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 339 (Tenn. 1976); *see also Hydro-Air Equip., Inc. v. Hyatt Corp.*, 852 F.2d 403, 406 (9th Cir. 1988); *Facilities Dev. Corp. v. Miletta*, 584 N.Y.S.2d 491, 495 (App. Div. 1992).

Cumberland Bend did not expressly agree to indemnify FNBC against Raskin's claims. To the contrary, the pertinent language in the November 18, 1992 letter agreement requires FNBC to indemnify Cumberland Bend against any claim brought by Raskin for commissions arising from the lease. The agreement contains no language that can reasonably be construed as an undertaking by Cumberland Bend to indemnify FNBC for anything. Accordingly, the record contains no evidence of an express, contractual agreement by Cumberland Bend to indemnify FNBC.

The evidence of the parties' negotiations surrounding the execution of the November 18, 1992 letter agreement is consistent with our interpretation of the agreement. All of these discussions focused on the limits and duration of FNBC's indemnity obligation to Cumberland Bend. They did not reflect any contemporaneous intention that Cumberland Bend would indemnify FNBC with regard to claims that Raskin might make for commissions accruing after April 1, 1996.

Even though there is no evidence that Cumberland Bend ever expressly agreed to indemnify FNBC for anything relating to Raskin's claims, the principles of restitution and unjust enrichment could warrant a court imposing an indemnity obligation on Cumberland Bend in appropriate circumstances. FNBC has not demonstrated that any of these circumstances exist in this case. The parties' relationship – buyer and seller – does not implicitly carry with it an indemnity obligation. There is no evidence that Cumberland Bend breached any contractual undertaking with any party to the transaction or that it engaged in any other sort of tortious or wrongful conduct.

FNBC is a sophisticated institution. It drafted the November 18, 1992 letter agreement and could easily have included a provision expressly requiring Cumberland Bend to indemnify FNBC for Raskin's claims accruing after March 1, 1996. Had FNBC done so, Cumberland Bend may very well have insisted on more favorable financial terms in return for accepting the indemnity obligation or may very well have rejected the letter agreement and refused to close on the sale of the property. To now impose an indemnity obligation on Cumberland Bend would effectively deprive it of its opportunity to bargain for the provision and would reward FNBC for its oversight. Accordingly, we hold that Cumberland Bend is neither expressly nor impliedly obligated to indemnify FNBC for the legal expenses FNBC incurred defending Raskin's claim and, therefore, that the trial court correctly granted the summary judgment dismissing FNBC's indemnification claim.

## IV.
### FNBC'S CONTRIBUTION CLAIM

FNBC's alternative claim is that the trial court erred by granting summary judgment as to FNBC's contribution claim. Specifically, FNBC asserts that because Cumberland Bend and FNBC shared a common obligation, Cumberland Bend should pay half the cost of defending the Raskin litigation.[3] We need not tarry long with this argument.

The doctrine of contribution is founded upon principles of equity and natural justice, rather than of contract law. *TRW-Title Ins. Co. v. Stewart Title Guar. Co.*, 832 S.W.2d 344, 346 (Tenn. Ct. App. 1991); *Esstman v. Boyd*, 605 S.W.2d 237, 241 (Tenn. Ct. App. 1979). It applies where the parties share a common obligation or liability, but one party has paid more than its proper share of the obligation. *Squibb v. Smith*, 948 S.W.2d 752, 754 (Tenn. Ct. App. 1997); *Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171, 186 (Tenn. Ct. App. 1991); *Winebarger v. Winebarger*, 653 S.W.2d 746, 748-49 (Tenn. Ct. App. 1983). The right to contribution among contract debtors does not arise until one of them actually pays more than its fair share of the joint obligation. *Young v. Kittrell*, 833 S.W.2d 505, 508 (Tenn. Ct. App. 1992); *Esstman v. Boyd*, 605 S.W.2d at 241.

The ingredient for contribution that is missing in this case is the existence of a common obligation. FNBC and Cumberland Bend simply do not have a common obligation with regard to Raskin's claims, or anyone else's claims for that matter. Because no joint obligation existed, FNBC could not have paid more than its fair share. Under the American Rule, litigants are responsible for paying their own attorney's fees in the absence of a statute or contractual agreement. *Pullman Standard Inc. v. Abex Corp.,* 693 S.W.2d 336, 338 (Tenn. 1985). We know of no legal or equitable rule that would require Cumberland Bend to pay one-half of the legal fees incurred by FNBC in addition to its own legal fees.

## V.

We affirm the summary judgment dismissing FNBC's complaint and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to the First National Bank of Chicago and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[3] FNBC incurred $40,000 in fees and expenses in defending the Raskin lawsuit, while Cumberland Bend incurred only $3,000 in defending the action. FNBC is much exercised about the disparity in fees, pointing out that Cumberland Bend "piggy backed" it, and got a "free ride." Perhaps so, perhaps not. FNBC apparently assumed the leading role in defending the litigation, which ended, it should be remembered, when both motions to dismiss were granted.