# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 16, 2001 Session

## TIP'S PACKAGE STORE, INC., ET AL. v. COMMERCIAL INSURANCE MANAGERS, INC., ET AL.

### Appeal from the Chancery Court for Knox County
No. 117251-3      Sharon J. Bell, Chancellor
**FILED DECEMBER 11, 2001**

### No. E2000-02070-COA-R3-CV

---

Plaintiffs H. Wayne Tipton ("Tipton") and Tip's Package Store, Inc., (Tip's) brought this lawsuit against George P. Taylor ("Taylor") and Commercial Insurance Managers, Inc., ("Commercial") seeking indemnification for an agreed judgment entered against Tip's in a lawsuit involving the tragic deaths of two young University of Tennessee students. Plaintiffs claim that Defendants improperly obtained for them an "occurrence" liability policy as opposed to a "claims made" liability policy, thereby resulting in a lack of insurance coverage for the wrongful death claims. After a jury trial, the Chancery Court entered judgment in favor of both Plaintiffs in the amount of $1,000,000 for indemnification based on the jury's answers to interrogatories. Defendants appeal, arguing, among other things, that: (1) the statute of limitations had run; (2) a covenant not to execute entered into between the families of the deceased young women and Plaintiffs extinguished any potential liability; and (3) the jury's responses to interrogatories were fatally inconsistent. We affirm in part, reverse in part, and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Ronald L. Grimm and Stephen W. Gibson, Knoxville, Tennessee, for the Appellants Commercial Insurance Managers, Inc., and George P. Taylor, IV.

James S. MacDonald, Knoxville, Tennessee, for the Appellees Rebecca J. Jordan, deceased, by next friend and parents, Marvin H. Jordan and Betty J. Jordan.

John K. Harber, Knoxville, Tennessee, for the Appellee Kathleen M. Moberg, deceased, by next friend and father, Warren D. Moberg.

M. Robin Repass and John D. Lockridge, Jr., Knoxville, Tennessee, for the Appellees Tip's Package Store, Inc., and H. Wayne Tipton.

# OPINION

## Background

On April 18, 1989, a tragic incident occurred in Knox County. Two University of Tennessee students, Kathleen Moberg and Rebecca Jordan, were struck and killed by an automobile driven by Gregory Darren Guhy ("Guhy"). In March and April of 1990, two separate lawsuits were filed in the Knox County Circuit Court by the parents of Ms. Moberg and Ms. Jordan as next friends. Included as defendants were Tip's Package Store ("Tip's") and H. Wayne Tipton ("Tipton"). Tip's is an incorporated retail liquor store and Tipton is a shareholder, officer, and director of that corporation. The material allegations against Tip's and Tipton involved claims of negligence in selling alcohol to a minor who allegedly then provided the alcohol to Guhy, who later struck and killed Ms. Moberg and Ms. Jordan while driving intoxicated.

The present lawsuit arises from a series of events which occurred shortly before the tragic automobile accident. This action was filed by Tip's and Tipton ("Plaintiffs") against Commercial Insurance Managers, Inc. ("Commercial"), George P. Taylor ("Taylor"), and George P. Taylor d/b/a Consolidated Insurance Services ("Consolidated"). The material allegations contained within the complaint center around Plaintiffs' attempt to secure liquor liability insurance through Commercial and Taylor ("Defendants"). Plaintiffs allege they were contacted in early summer or fall of 1989, by Defendants who inquired into selling Plaintiffs liability insurance. At that time, Plaintiffs already were insured through Lexington Insurance Company ("Lexington"), with policy limits of $300,000. The insurance policy through Lexington was a "claims made" policy with effective dates of 12/22/88 through 12/22/89. Plaintiffs claim they made it clear to Defendants that there was to be no gap in coverage and they wanted coverage similar to that which was currently in effect. Plaintiffs claim they were assured by Taylor that there would be no lapse in coverage and the new coverage would be identical to the coverage afforded by Lexington. Relying on these assurances, Plaintiffs obtained new insurance coverage through Great American Insurance Companies ("Great American"), with an effective policy date of 12/19/89 through 12/19/90. The policy limits on this insurance policy were $1,000,000. The policy issued through Great American was, however, an "occurrence" policy, as opposed to a "claims made" policy.

The wrongful death suits filed against Tip's and Tipton by the parents of Ms. Moberg and Ms. Jordan were forwarded to both Lexington and Great American for coverage and/or defense. Lexington denied any coverage or obligation to defend under its "claims made" policy because the claims by the parents of Ms. Moberg and Ms. Jordan were made after the effective date of its policy. Likewise, Great American denied coverage or an obligation to defend under its "occurrence" policy because the incident which resulted in the deaths of Ms. Moberg and Ms. Jordan did not occur during

the effective date of its policy.[1]  Because of the absence of coverage, Plaintiffs brought suit against Defendants for negligence, breach of contract, and fraudulent misrepresentation.

On April 10, 1990, after discerning that there might not be any applicable insurance coverage, Plaintiffs' attorney sent Taylor a letter which states as follows:

> This will confirm our telephone conversation this morning relative to the liquor liability insurance policy obtained by your company for Tip's Package Store, Inc.
>
> As you are aware, Tip's Package Store, Inc. and Wayne Tipton, Individually, along with others has (sic) been sued in the captioned matter arising out of an alleged sale of alcoholic beverage to a minor on or about April 18, 1989.
>
> It appears that you acquired a liquor liability insurance policy for Tip's Package Store, Inc. with effective coverage dates from December 19, 1989 to December 19, 1990.  This policy appears to have been issued by the Great American Insurance Company and bears Policy Number PAC 1-64-70-38-00.  This policy is an "occurrence" policy.  As you are aware, Tip's Package Store, Inc. previously maintained a policy of liquior (sic) liability insurance policy through the Lexington Insurance Company with effective dates of coverage of December 22, 1988 through December 22, 1989, Policy Number PC 559 0733 0262.  This policy was a "claims made" policy.
>
> It appears that at the time Tip's Package Store, Inc. moved its coverage from the Casey C. Jones Insurance Group, Inc. to your organization, you were given copies of the previous policy and advised in a meeting between yourself, Wayne Tipton and Charles LaRue that Tip's Package Store, Inc. desired to obtain an insurance policy that would provide continual liquor liability coverage.  In as much (sic) as the policy that you issued was an "occurrence policy" and the previous policy was a "claims made" policy, there has been a lapsed (sic) in coverage which includes the time frame involved in the captioned suit.

---

[1] Plaintiffs also had an umbrella policy through American States Insurance Company.  American States initially provided a defense to Plaintiffs in the lawsuit filed by the parents of Ms. Moberg and Ms. Jordan.  American States then obtained a declaratory judgment which relieved it of the duty to defend or to provide coverage.  That ruling is not at issue in this appeal.

I respectfully request that you notify your errors and ommissions (sic) carrier of this situation and ask that they contact me immediately.

I am enclosing a copy of the captioned suit. As I advised, we are under a very short time constraint and it may well be that your carrier wishes to defend this suit on behalf of Tip's Package Store, Inc. and Wayne Tipton. Obviously, if someone does not defend this suit on behalf of these parties, I will undertake same and will be looking toward your carrier for payment of the fees and expenses involved in same as well as indemnification of any judgment that may be rendered against these insureds.

I appreciate a prompt response from your carrier.

Three years and six days after the date of this letter, on April 16, 1993, the present lawsuit was filed in the Knox County Chancery Court. Defendant George P. Taylor d/b/a/ Consolidated Insurance Services immediately filed a motion to dismiss or for summary judgment, claiming that Consolidated Insurance Services was a partnership created on January 1, 1990, and therefore could not possibly have had any involvement with Tip's or the events complained of in the complaint. Commercial filed an answer denying the pertinent allegations contained within the complaint and averring that Plaintiffs were fully aware that the policy issued through Great American was an "occurrence" policy. Commercial did not assert a statute of limitations defense in its answer. An Agreed Order was entered in August of 1993, by the Chancery Court granting George P. Taylor d/b/a/ Consolidated Insurance Company's motion to dismiss or for summary judgment. Although George P. Taylor d/b/a/ Consolidated Insurance Company was no longer a defendant, George P. Taylor remained a defendant in the lawsuit but never filed an answer.

On February 5, 1996, the Mobergs and Jordans entered into a Settlement Agreement and Release ("Agreement") with Tip's and Tipton. In that Agreement, Tip's and Tipton agreed to the entry of a judgment against Tip's for compensatory damages with a stipulated amount of damages. The Mobergs and Jordans released any claims for punitive damages and fully released all claims they had against Tipton individually. The parties to the Agreement also agreed that, notwithstanding the fact that a judgment for compensatory damages would be entered against Tip's, the Mobergs and Jordans would:

> relinquish and release any and all rights to execute against the assets of Tip's, or in any other way seek to legally satisfy the judgment for compensatory damages to be rendered against Tip's with the sole exception that the Mobergs and the Jordans retain their rights as third party beneficiaries of the claim currently pending in the Chancery Court for Knox County, Tennessee, against the errors and omissions carrier of the insurance agent for Tip's who failed to secure appropriate liquor liability coverage.…

-4-

Five days later, on February 15, 1996, the Knox County Circuit Court found Guhy 66.67% liable for the injuries and deaths of Ms. Moberg and Ms. Jordan, and also found Tip's 33.33% percent liable. The lawsuit against Tipton was dismissed with prejudice. After determining: (1) the pecuniary value of the lives of the deceased young ladies based on stipulated expert testimony; and (2) the amount of medical and funeral expenses, the Circuit Court prorated the damages based on the respective degrees of fault of the defendants. The Circuit Court then entered judgment in favor of the Mobergs against Tip's in the amount of $812,226.06, and in favor of the Jordans against Tip's in the amount of $547,806.40.

With the Circuit Court judgment in hand, the Mobergs and Jordans then sought to intervene in the Chancery Court lawsuit, claiming they had a direct pecuniary interest in this lawsuit which was not being adequately protected by the existing parties. They also claimed they were intended beneficiaries and/or otherwise entitled to the benefits of the insurance contract which Tip's and Commercial "attempted" to enter into. The Chancery Court granted the motions to intervene. Plaintiffs then amended their complaint to substitute new counsel, change certain allegations regarding costs and attorneys fees, and bring to the Chancery Court's attention the judgment entered in the Circuit Court. Commercial filed an answer to the amended complaint. Again, no statute of limitations defense was asserted, and no answer was filed by Taylor.

Commercial filed an "Amended Answer to Amended Complaint", on March 27, 1998, almost five years after this litigation began. In this pleading, Commercial alleged for the first time that Plaintiffs' claims of negligence and fraudulent misrepresentation were barred by the applicable statute of limitations, although no mention was made as to what that statute of limitations actually was. Five days later, Commercial filed a motion to dismiss the claims of negligence and fraudulent misrepresentation, asserting that the allegations of negligence and fraudulent misrepresentation were well known to Tip's and Tipton on April 10, 1990, the date of the letter set forth at length above. According to Commercial, the "Statute of Limitations for tort actions involving negligence or fraudulent misrepresentation (T.C.A. § 28-3-104 - in 1997 Supplement) is one (1) year from the date of the occurrence." Commercial averred that since the present lawsuit was filed three years and six days after April 10, 1990, the one year statute of limitations on these claims had long since expired, thereby leaving the breach of contract claim as the only remaining viable claim. Taylor did not join in this motion. Plaintiffs filed a response arguing, inter alia, that the motion to dismiss should be denied pursuant to Rules 8 and 12 of the Tenn. R. Civ. P. because Commercial waived any statute of limitations defense since it was not timely asserted. Commercial's motion was denied, but the Chancery Court specifically stated that this defense could be raised again by motion at an appropriate time during trial.[2]

After a five day jury trial, the Chancery Court issued an Opinion based in large part on interrogatories answered by the jury. The Chancery Court dismissed the breach of contract claim

---

[2] Since the statute of limitations defense was decided on the merits by the Chancery Court at a later time, we will treat the Chancery Court's resolution of this issue as an implicit rejection of Plaintiffs argument that this defense was not asserted in a timely fashion.

based on the jury's conclusion that Taylor agreed to obtain continuous liquor liability coverage and that he provided this coverage. In a subsequent Opinion issued by the Chancery Court, the jury's conclusion on this issue was discussed in more detail. The Chancery Court stated that the jury was asked to determine the contractual duty assumed by Defendants and "apparently believed that the definition submitted by defendants, that 'continuous coverage' meant coverage with no break in time, was all that was offered by the defendants and ultimately accepted by Tipton." The Chancery Court also found that while the jury concluded Taylor had informed Tipton that the policy to be issued was an "occurrence policy" and not a "claims made" policy, it also found that Taylor had failed to make sure Tipton knew and appreciated the differences between these two types of policies. According to the Chancery Court, this was sufficient to support a judgment against Taylor and Commercial for professional negligence. The Chancery Court also addressed the one year statute of limitations defense, concluding that the action was timely filed because the statute of limitations did not begin to run until the judgment was entered in the Circuit Court in February of 1996, at which time Plaintiffs suffered a "legally cognizable" injury. The Chancery Court then determined that Plaintiffs were entitled to a judgment in the amount of $1,000,000.00 for the professional negligence of Taylor which was imputable to Commercial under agency principles. A Final Judgment was entered in accordance with the Chancery Court's Opinions, at which time the Chancery Court awarded judgment in favor of Tip's and Tipton against Taylor and Commercial "jointly and severally" in the amount of $1,000,000.00 "for indemnification against the judgments awarded to the intervening Plaintiffs, the Jordans and the Mobergs, by judgment entered in the Circuit Court for Knox County, Tennessee, on February 15, 1996."

Both Defendants then filed a motion and amended motion for new trial and motion to alter or amend the final judgment and findings of fact and conclusions of law. Defendants asserted there were approximately seventy-eight errors, the first one being:

> The Court erred in failing to dismiss the Plaintiffs' and Intervening Plaintiffs' Complaints on the issues of alleged negligence, on the ground that the Complaints were filed after the applicable one (1) year Statute of Limitations had run.

Since Taylor had neither filed an answer nor joined in the previous motion to dismiss filed by Commercial pertaining to the statute of limitations defense, this post-trial motion was the first time this defense was raised on Taylor's behalf. In addition to the statute of limitations defense, and as pertinent to this appeal, five other issues were raised in Defendants' motion for new trial and motion to alter or amend the final judgment and findings of fact and conclusions of law. These other five issues, which we take verbatim from Defendants' brief on appeal are:

> (1) The Trial Court erred in not dismissing the complaint on the basis that the Settlement Agreement & Release entered into by the original Plaintiffs and Intervening Plaintiffs eliminated the liability of the Defendants;

(2) The Trial Court erred in not dismissing the claims of the Intervening Plaintiffs due to their lack of standing and in not ordering a new trial;

(3) The Trial Court erred in not dismissing the complaint on the basis that the Knox County Circuit Court Final Judgment is null, void, and of no legal effect;

(4) The Trial Court erred in not ordering a new trial on the basis of inconsistencies in the jury's answers to the special interrogatories; and

(5) The Trial Court erred in not reducing the judgment against Defendants to Three Hundred Thousand Dollars ($300,000).

Plaintiffs also appeal the amount of the judgments they were awarded, claiming that Defendants should be required to pay the entire amount of the Circuit Court judgment as tort damages.

**Discussion**

First, we address the statute of limitations issue. During the course of this litigation, at least until this appeal, the main focus on this argument by the parties was when the one year statute of limitations began to run. Defendants claimed that the one year statute of limitations began to run no later than April 10, 1990, the date on which Plaintiffs' counsel sent Defendants the letter informing them of their alleged negligence and requesting that they notify their errors and omissions carrier of the situation. Plaintiffs argued, and the Chancery Court agreed, that the statute of limitations began to run on the date the Circuit Court judgment was entered, at which time Plaintiffs suffered a "legally cognizable" injury.

We believe the statute of limitations issue is resolved by a determination of which statute of limitations applies, as opposed to when it began to run. The applicable statute of limitations is determined according to the gravamen of the complaint, rather than its designation as an action for tort or contract. *Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996). In order to do this, the court must look to the basis for which the damages are sought. *Id.* In Tennessee, it is well established that an insurance agent employed to maintain insurance coverage for a client "may be held liable on a negligence theory if the agent fails to use reasonable care and diligence in continuing the insurance, either by obtaining a renewal or replacement policy or by properly maintaining an existing policy." *Wood v. Newman, Hayes & Dixon Insurance Agency*, 905 S.W.2d 559, 562 (Tenn. 1995). In the present case, relying on the jury's answers to interrogatories, the Chancery Court concluded that Taylor was guilty of professional negligence, but

-7-

there had been no breach of contract.[3] The judgment against the Defendants was thus predicated in tort.

Since there is no specific statute of limitations governing Plaintiffs' negligence claim, we must decide if it is a personal tort action pursuant to Tenn. Code Ann. § 28-3-104(a)(1) which has a one year statute of limitations, or a property tort action pursuant to Tenn. Code Ann. § 28-3-105(1) which has a three year statute of limitations. A similar situation was addressed by this Court in *Bethlehem Steel Corporation v. Ernst & Whinney*, 1989 WL 139701 (Tenn. Ct. App. Nov. 21, 1989), which involved a claim of professional negligence against an accounting firm. In *Bethlehem*, the plaintiff claimed it reasonably relied on a year end audited financial statement prepared by the defendant with regard to one of the companies to which the plaintiff supplied steel. The plaintiff claimed this report was negligently prepared and it relied on the report to its financial detriment. The jury returned a verdict for the plaintiff in the amount of $500,000. On appeal, one of the issues was which statute of limitations applied, the one year statute of limitations in Tenn. Code Ann § 28-3-104(a), or the three year in Tenn. Code Ann. § 28-3-105(1). In concluding that the action was governed by the three year statute of limitations, this Court stated as follows:

> The one year limitations period found in T.C.A. § 28-3-104(a) is not restricted to bodily injuries. The Tennessee Supreme Court has stated that "injuries to the person" include actions brought for injuries resulting from "invasions of rights that inhere in man by reason of being a person in the eyes of the law." *Brown v. Dunstan,* 219 Tenn. 291, 295, 409 S.W.2d 365, 367 (1966). The Supreme Court, however, has also held that injury to property is not limited to physical injury to property. *Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977). Appellant contends that it is claiming an injury against property and therefore the three year statute of limitations found in T.C.A.§ 28-3-105(1) is controlling in this case.
>
> "The applicable statute of limitations in a particular cause will be determined according to the gravamen of the complaint." *Vance v. Schulder*, at 931. In *Brown v. Dunstan*, supra, the plaintiff alleged that the defendants entered into a conspiracy to defraud and discredit him. The court held that the gravamen of the action was damages to the plaintiff's reputation as a business man, father, and respected man of society and concluded that such damages were for injuries "to the person." In *Vance v. Schulder*, supra, the court held that the gravamen of the plaintiff's action was fraud in the inducement of a contract resulting in a financial loss of almost $35,000. The court

---

[3] Several jurisdictions allow claims such as those asserted in the present case to be grounded in negligence or in contract, or both. *See* Robin Cheryl Miller, J.D., Annotation, *Liability of Insurance Agent or Broker on Ground of Inadequacy of Liability-Insurance Coverage Procured*, 60 A.L.R.5th 165 (1998) at § 4.

concluded that the loss in value sustained by plaintiff from the alleged tort of fraud was included within the phrase "injuries to personal property" as contemplated by the three year statute of limitations.

In light of the Supreme Court's opinions mentioned above, we are required to examine the complaint in order to determine if the gravamen of appellant's claim is one of injury to the person or injury to personal property. We are of the opinion that appellant's claim is for injury to personal property as contemplated by the court in *Vance v. Schulder*, supra and therefore we are in agreement with the trial court that the three year statute applies in this case.

*Bethlehem*, 1989 WL 139701 at *4 (Tenn. Ct. App. 1989). On appeal to the Tennessee Supreme Court, the decision of this Court as it pertained to the applicable statute of limitations was affirmed "for the reasons stated in its opinion". *See Bethlehem Steel Corporation v. Ernst & Whinney*, 822 S.W.2d 592, 596 (Tenn. 1991).

In the present case, the damages alleged by Plaintiffs are economic losses resulting from having to pay a judgment which they would not have had to pay but for the negligence of Taylor. In our opinion, Plaintiffs' claim is for injury to property and the three year statute of limitations found in Tenn. Code Ann. §28-3-105(1) applies.[4]

Since we hold the one year statute of limitations does not apply, the Chancery Court's conclusion that the one year statute of limitations had not run is of no consequence. We, therefore, express no opinion on the propriety of the Chancery Court's conclusion as to when the one year statute of limitations began to run.

In Commercial's motion to dismiss and again in Defendants' motion for new trial, it was argued that the negligence claim was barred by the applicable statute of limitations, and that the applicable statute of limitations was one year. It never was argued by Defendants at the trial court level that the negligence claim, or any other claim for that matter, was barred by the three year statute of limitations. This three year statute of limitations argument was advanced for the first time on appeal.

A statute of limitations defense must be specifically pled or generally it will be considered waived. *See* Tenn. R. Civ. P. 8.03. No waiver will occur, however, if the opposing party is given fair notice of the defense and an opportunity to rebut it. *George v. Building Materials*

---

[4] Subsequent to the *Bethlehem* decision, Tenn. Code Ann. § 28-3-104(a) was amended to specifically provide that malpractice actions against attorneys and accountants were governed by a one year statute of limitations. The legislature did not include professional negligence actions against insurance agents in this amendment. The result in *Bethlehem* reached by this Court and affirmed by the Supreme Court is, therefore, still instructive in the present case.

*Corporation of America*, 44 S.W.3d 481, 486-87 (Tenn. 2001). Since it was never specifically pled or argued to the Chancery Court by Defendants that the three year statute of limitations had run, Defendants cannot assert this argument for the first time on appeal. *See Smith v. Harriman Utility Board,* 26 S.W.3d 879, 887 (Tenn. Ct. App. 2000)("Our jurisdiction is appellate only, T.C.A. § 16-4-108(a)(1), and thus the rule has long been well-settled that [t]his Court can only consider such matters as were brought to the attention of the trial court and acted upon or [pretermitted] by the trial court."). It likewise cannot be argued that Plaintiffs had fair notice of this defense because it was never pled or raised by Defendants in the Chancery Court.

We hold the one year statute of limitations does not apply. We further hold that because Defendants never pled or argued in the Chancery Court that the three year statute of limitation had run, this defense is waived. We, therefore, cannot dismiss this suit as being barred by either the one year or three year statute of limitations. Plaintiffs' argument that Taylor never asserted or properly raised the one year statute of limitations defense thus becomes moot. Defendants' position concerning the statute of limitations is without merit.

The next argument advanced by Defendants is that the Chancery Court erred in not dismissing the complaint because the Agreement effectively extinguished any liability on the part of Tip's and Tipton. In making this argument, Defendants rely upon several cases from other jurisdictions, most notably *Freeman v. Schmidt Real Estate & Ins., Inc.*, 755 F.2d 135 (8th Cir. 1985)(applying Iowa law). *Freeman* involved a claim against Schmidt Real Estate & Ins., Inc., and others alleging negligent failure to procure liability insurance for Russell Catron. Freeman and Catron were in an automobile accident, and in settlement of that litigation, Catron confessed judgment and assigned his rights against the insurance agent to Freeman in exchange for a promise not to execute on the judgment. The magistrate granted summary judgment, concluding that because of the agreement not to execute and the "indemnity nature" of insurance generally, Freeman had gained no enforceable rights through the assignment from Catron. *Id.* at 136.

The United States Court of Appeals for the Eighth Circuit affirmed. In so doing, the Eighth Circuit acknowledged the split of authority among the various states which have addressed this issue. The Eighth Circuit noted that some states hold that a covenant not to execute is merely a contract and not a release, such that the underlying tort liability remains intact and a breach of contract action lies if the injured party seeks to collect on the judgment. The tortfeasor is, therefore, still legally obligated to the injured party, and the insurer must make good on its contractual promise to pay. 755 F.2d at 137, 138 (citing *State Farm Mutual Automobile Insurance Co. v. Paynter,* 122 Ariz. 198, 593 P.2d 948, 953 (Ct. App.1979); *Globe Indemnity Co. v. Blomfield*, 115 Ariz. 5, 562 P.2d 1372, 1375 (Ct. App.1977); *Critz v. Farmers Insurance Group*, 230 Cal. App.2d 788, 41 Cal. Rptr. 401, 410 (1964)(agreement holding tortfeasor harmless as to judgment in excess of his insurance coverage doesn't foreclose suit against insurer for bad-faith failure to settle)). Under this theory, an uninsured party would be injured by the insurance agent's negligence in failing to procure a policy because he or she would have the outstanding "liability" against which he or she sought to insure. 755 F.2d at 138.

The *Freeman* Court noted that other states reach the same conclusion utilizing a different rationale. These cases focus on the right of the insured to protect himself from bad faith conduct of his insurer:

> For example, the Nebraska Supreme Court has held that an insured, and thus the insurer, is "legally obligated to pay" within the meaning of the policy despite an agreement not to execute when the insured enters into such an agreement to protect himself from the insurer's denial of coverage and refusal to defend under the policy. *Metcalf v. Hartford Accident & Indemnity Co.*, 176 Neb. 468, 126 N.W.2d 471 (1964). The Nebraska court stressed that the insurer had "repudiated its obligation" to the insured, *id.*, 126 N.W.2d at 476, and some element of misconduct by the insurer generally has been present in the cases in which courts have followed *Metcalf. E.g., American Family Mutual Insurance Co. v. Kivela*, 408 N.E.2d 805, 813 (Ind. Ct. App. 1980) (insurer "abandoned" insured when it refused to defend on the ground that the policy had been revoked for false statements on the application); *Griggs v. Bertram*, 88 N.J. 347, 443 A.2d 163 (1982) (insurer failed to promptly notify insured that it was denying coverage). Even those courts which base their findings of liability on the distinction between a release and a covenant not to execute acknowledge the policy implications of an opposite conclusion– settlements such as the one here would no longer serve their intended purpose. *E.g., Paynter*, 593 P.2d at 953.

*Freeman*, 755 F.2d at 138.

*Freeman* also discussed the cases reaching a contrary conclusion. These courts give the "legally obligated to pay" language the practical construction: "An insured protected by a covenant not to execute has no compelling obligation to pay any sum to the injured party; thus, the insurance policy imposes no obligation on the insurer." Id. (citing *Stubblefield v. St. Paul Fire & Marine Insurance Co.*, 267 Or. 397, 517 P.2d 262, 264 (1973) (en banc); *Bendall v. White*, 511 F. Supp. 793, 795 (N.D. Ala. 1981); *Huffman v. Peerless Insurance Co.*, 17 N.C. App. 292, 193 S.E.2d 773, 774, *cert. denied*, 283 N.C. 257, 195 S.E.2d 689 (1973)). An individual who is uninsured due to an agent's negligence then will have suffered no damages, as he would have had no rights under the policy anyway. *Freeman*, 755 F.2d at 138. *See also Far West Federal Bank, S.B., v. Transamerica Title Insurance Company*, 99 Or. App. 340, 345, 791 P.2d 1259, 1262 (Or. App.1989)(a promise to execute only to the extent that an insurer is liable terminates the insured's liability and there is no loss that the insured could sustain.).

The *Freeman* decision was a diversity case applying Iowa law. At the time of that decision, the issues had not been squarely decided by the Iowa Supreme Court. Unfortunately for Defendants, once this happened, the Iowa Supreme Court reached a different conclusion. In *Red*

-11-

*Giant Oil Company v. Lawlor*, 528 N.W.2d 524 (Iowa 1995), the issue was whether "an insurer may be liable to the injured party when the insured before judgment is protected by an agreement not to execute." *Id.* at 529. Rejecting the rationale of *Freeman*, the Iowa Supreme Court concluded that such agreements were permitted in that state. *Id.* at 531. More specifically, the *Red Giant* court determined that the covenant not to execute was "merely an agreement" and "not a release". The underlying tort liability therefore remained. *Id.* at 532. *See also Kobbeman v. Oleson*, 574 N.W.2d 633, 636 (S. D. 1998)("After considering the gamut of decisions . . . we find ourselves in agreement with those courts upholding assignments of a cause of action in exchange for a covenant not to execute in instances of failure to procure requested insurance.").

In the present case, there is no applicable insurance policy, so we are not directly confronted with "legally obligated to pay" policy language. The decisions from the various states do, however, provide valuable guidance. While we located no Tennessee authority directly on point, *Wolff & Munier, Inc., v. Price-Waterhouse*, 811 S.W.2d 532 (Tenn. Ct. App. 1991) is helpful. In anticipation of the entry of a judgment, Wolff & Munier entered into a settlement agreement with Samuelson whereby Samuelson agreed to pay a total of $175,000 in a series of monthly payments. *Id.* at 533. In return, Wolff & Munier agreed to refrain from executing on the judgment until it was paid off, at which time a release in favor of Samuelson would be executed. *Id.* Defendant Price Waterhouse argued that the settlement agreement precluded recovery against all defendants pursuant to the Uniform Contribution Among Tort-Feasors Act, Tenn. Code Ann. § 29-11-101. The trial court agreed and dismissed the lawsuit. In vacating the dismissal, this Court stated that under the terms of the settlement agreement, there was no release at the present time. "The only thing in effect … is an agreement by [Wolff & Munier] not to execute on the judgment while Samuelson is not in default of the terms of the settlement agreement." *Id*. at 535.

After considering the various issues and ramifications thereof, we agree with the conclusion reached by Iowa Supreme Court in *Red Giant*. We hold that based on the language contained within the Agreement at issue in this case, the covenant not to execute entered into between the Mobergs, Jordans, and Tip's was a contract between these parties which did not extinguish the underlying liability of Tip's for compensatory damages. Tip's is thus an injured party because it has outstanding liability against which it sought to insure. The Defendants' argument on this issue as to Tip's is without merit.

Notwithstanding this conclusion, the clear language of the Agreement did in fact release any and all claims against Tipton individually, and Tipton was thus dismissed, with prejudice, from the Circuit Court lawsuit. The Agreement did operate as a full release as to Tipton. Since Tipton was fully released from any potential liability and because he has suffered no damages since he was dismissed from that lawsuit, we believe the Chancery Court was in error in entering a judgment in favor of Tipton. The entry of the judgment in favor of Tipton is, therefore, reversed.

The third argument advanced on appeal by Defendants is that the Mobergs and Jordans are not third party beneficiaries and should not have been allowed to intervene as plaintiffs in this action. Defendants assert that they were prejudiced by this improper intervention because

-12-

Plaintiffs and Intervening Plaintiffs were thus allowed to "marshal their combined forces against the Defendants" at trial.

In resolving this issue, we are guided by the decision of this Court in *Waddell v. Davis*, 571 S.W.2d 844 (Tenn. Ct. App. 1978). *Waddell* involved a passenger in an automobile suing the automobile owner's insurance agent for negligently failing to obtain uninsured motorist coverage on the owner's vehicle. The *Waddell* plaintiffs claimed they were third party beneficiaries to the contract to obtain uninsured motorist coverage between the insurance agent and the owner of the vehicle. In concluding that the passenger *could* be a third party beneficiary, this Court stated as follows:

> It must be here noted that the plaintiffs' lawsuit is not based upon a contract of insurance; no policy was issued. The plaintiffs sue the agent Davis for damages based upon his negligent failure to have the policy issued. Plaintiffs sue Cotton Belt Insurance Company under the theory of *respondeat superior*, seeking damages as a result of the negligent failure to act on the part of Cotton Belt's agent, Davis.
>
> * * * *
>
> The plaintiffs argue that they are third-party beneficiaries to the contract between the owner of the vehicle and Davis whereby Davis was to obtain uninsured motorist coverage for the owner. Third-party beneficiary contracts are recognized and enforced in Tennessee at the suit of the third-party beneficiary. *National Surety Corp. v. Fischer Steel Corp.* (1964), 213 Tenn. 396, 374 S.W.2d 372. Further, we hold that where a promise is made to benefit a third-party on the happening of a contingency, the third-party may sue on the contract upon the occurrence of the contingency. Compare *Johnson v. Holmes Tuttle Lincoln-Mercury* (1958), 160 Cal.App.2d 290, 325 P.2d 193.
>
> This cause is presently being considered only upon the motion to dismiss which was filed by Davis. On motion to dismiss we take the averments of the complaint as true, therefore for the purposes of the motion we find that a contract did exist between the owner of the vehicle and Davis whereby the latter was to obtain a contract of uninsured motorist coverage for the owner, and the defendant Davis negligently breached that contract. The issue is whether the plaintiff, an injured passenger in the owner's automobile, can establish that she is a third-party beneficiary to the contract between the owner and Davis.

The test is whether the plaintiff-passenger would have been an "insured" under the policy had it been issued as contracted for. In 12 Couch on Insurance 2d, § 45:645 (2d Ed. 1964); it is stated that the term "insured" under an uninsured motorist endorsement includes the named insured, his spouse, relatives living in the same household, operators with permission and occupants of the insured vehicle. The policy that should have been issued is not before the Court. We can not say on motion to dismiss whether the plaintiff-passenger would have been an insured under the policy contracted for, had it been issued. A fact question is presented which requires proof.

*Waddell v. Davis*, 571 S.W.2d 844, 847-48 (Tenn. Ct. App. 1978).

In the present case, we are confronted with a similar dilemma as was faced in *Waddell*. Specifically, we are called upon to decide whether, as a matter of law, the Mobergs and Jordans would have been considered third party beneficiaries under the contract of insurance which *should* have been issued had Taylor not negligently failed to make sure Tipton knew and appreciated the differences between a "claims made" and an "occurrence" policy. The policy that would have issued had there been no negligence obviously does not exist.

Defendants argue that the language in the contracts with Lexington and Great American do not support the conclusion that the Mobergs and Jordans were third party beneficiaries. The problem with this argument is that these insurance policies simply do not afford any coverage in this case. We cannot rely on the language of insurance policies which do not apply when ascertaining whether the Mobergs and Jordans would have been third party beneficiaries under a policy that should have been, but was not, issued. In the absence of such a policy, we agree with the conclusion reached by the *Waddell* Court that such a determination, at least to some extent, presents a fact question requiring proof. Perhaps if this precise issue had been litigated at trial and, if necessary, posed to the jury, the facts would have supported a holding one way or the other that the Mobergs and Jordans would or would not have been intended third party beneficiaries. On the record before us, however, we are unable to conclude that the Chancery Court erred as a matter of law in denying Defendants' motion to dismiss the claims of the Intervening Plaintiffs. Since resolution of this issue would have involved a factual determination, the Mobergs and Jordans would necessarily have been allowed to participate in the trial until, or unless, either: (1) the facts were sufficient to support a motion for summary judgment by Defendants on this issue, or (2) the question was presented to the jury for resolution. Accordingly, Defendants' argument that they were prejudiced by the trial participation of the Mobergs and Jordans is without merit.

We also note that even though the Mobergs and Jordans were allowed to intervene, they were not awarded a judgment in this case. As discussed above, judgment was awarded in favor of only Tip's and Tipton. Our reversal of the judgment in favor of Tipton, *supra*, does not change our analysis in any material manner, and neither does the fact that the judgment awarded to Tip's will be used to satisfy, at least in part, Tip's outstanding liability to the Mobergs and Jordans. Even

if they improperly were allowed to intervene, when considering the record as a whole, we cannot say that this error would have more probably than not affected the judgment or that it resulted in prejudice to the judicial process. For this reason alone, we would not reverse or vacate the judgment because of the Chancery Court's decision to allow the Mobergs and Jordans to intervene. *See* Tenn. R. App. P. 36(b).

Next, Defendants argue that the Chancery Court erred in not dismissing the complaint on the basis that the judgment entered in the Circuit Court was null, void, and of no legal effect. Defendants argue that the judgment was not entered in compliance with Tenn Code Ann. § 57-10-101 and 102. These statutes provide:

§ 57-10-101. Proximate cause.

The general assembly hereby finds and declares that the consumption of any alcoholic beverage or beer rather than the furnishing of any alcoholic beverage or beer is the proximate cause of injuries inflicted upon another by an intoxicated person.

§ 57-10-102. Standard of proof.

Notwithstanding the provisions of § 57-10-101, no judge or jury may pronounce a judgment awarding damages to or on behalf of any party who has suffered personal injury or death against any person who has sold any alcoholic beverage or beer, unless such jury of twelve (12) persons has first ascertained beyond a reasonable doubt that the sale by such person of the alcoholic beverage or beer was the proximate cause of the personal injury or death sustained and that such person:

(1) Sold the alcoholic beverage or beer to a person known to be under the age of twenty-one (21) years and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold; or

(2) Sold the alcoholic beverage or beer to an obviously intoxicated person and such person caused the personal injury or death as the direct result of the consumption of the alcoholic beverage or beer so sold.

Defendants argue that the Circuit Court judgment is void because there was no determination made *by a jury* beyond a reasonable doubt that Tip's sold the alcohol to a minor and such person caused the injury or death.

Defendants certainly were aware as early as 1990 that there was a substantial likelihood of litigation arising from the deaths of Moberg and Jordan, and that their clients, Tip's and Tipton, probably were not insured. They also were aware that Tip's and Tipton would be seeking indemnification from them, per the letter of August 10, 1990. Defendants forwarded the April 10, 1990 letter to their errors and omissions carrier and informed Plaintiffs' attorney of this via letter dated June 17, 1990. By letter dated February 23, 1993, the errors and omissions carrier was given an opportunity to participate in the settlement discussions and negotiations, but refused to do so. From the record, it appears Defendants took no action during the pendency of the Circuit Court litigation to protect their interests or those of their clients, Tip's and Tipton. After the Circuit Court judgment was entered, however, Defendants finally filed "a Motion to Intervene in the underlying cases seeking an Order allowing them to Intervene and file a Petition to Set Aside the Judgments entered in those cases pursuant to Tennessee Rule of Civil Procedure, rule 60." The record on appeal does not contain the ruling of the Circuit Court on this motion, but based on the current posture of this case, we can only assume it was denied. Defendants now seek in this lawsuit to collaterally attack the final judgment of the Circuit Court.

We believe the outcome of this issue is resolved by our Supreme Court's opinion in *Jerkins v. McKinney*, 533 S.W.2d 275 (Tenn. 1976). In *Jerkins*, the Court discussed collateral attacks on judgments and adopted the following reasoning by the United States Court of Appeals for the Tenth Circuit in *Winfield Associates, Inc. v. Stonecipher*, 429 F.2d 1087 (10th Cir. 1970):

> Generally, such an independent action must show a recognized ground, such as fraud, accident, mistake or the like, for equitable relief and that there is no other available or adequate remedy. It must also appear that the situation in which the party seeking relief finds himself is not due to his own fault, neglect or carelessness. In this type of action, it is fundamental that equity will not grant relief if the complaining party "has, or by exercising proper diligence would have had, an adequate remedy at law, or by proceedings in the original action * * * to open, vacate, modify or otherwise obtain relief against, the judgment." The granting of relief in this unusual type of proceeding lies largely within the discretion of the trial judge. 429 F.2d at 1090.

*Jerkins*, 533 S.W.2d at 281, 282.

Defendants took no action to protect their interests or that of their clients in the Circuit Court lawsuit until after the judgment was rendered, at which time they attempted to intervene in the Circuit Court lawsuit and challenge the validity of that judgment. When they were unsuccessful, they were entitled to appeal the denial of that motion to this Court, which, from the record before us, they did not do. Defendants thus had an adequate remedy available to them to challenge the denial of their motion seeking to set aside the judgment, if indeed there was error. Because they did not appeal the denial of their motion to intervene and have the judgment set aside,

-16-

the determination by the Circuit Court is final and they cannot reassert that same argument in this case in this appeal.[5] Defendants had more than sufficient opportunity to protect their and their clients' interests in the Circuit Court action, but chose not to do so. Defendants now ask much too late to be protected from their own choice.

Next, Defendants attack the jury's responses to interrogatories on the basis that they are inconsistent and cannot be reconciled. The interrogatories posed to the jury as well as the jury's responses are as follows:

1.      Did Taylor agree to obtain continuous liquor liability coverage for Tip's Package Store, Inc. without a gap in coverage?

            X

           Yes           No

2.      Did Taylor fail to provide the coverage he agreed to provide?

                          X

           Yes           No

3.      Did Taylor fail to make sure Tipton knew and appreciated the differences between his then existing liquor liability coverage and the new coverage that Taylor was proposing?

            X

           Yes           No

4.      Did Taylor inform Tipton that the policy to be issued was an "occurrence" policy and not a "claims made" policy?

            X

           Yes           No

[5] In the *Red Giant* and other cases cited above, an issue that is often discussed is the potential for fraud and collusion between the insured and the injured party when agreeing to a stipulated judgment which, in turn, will be used against the insurance carrier. This issue has not been addressed on appeal, and even if it had, we would likewise conclude that it has been waived by not being asserted and/or appealed in Defendant's motion to intervene and set aside the judgment filed in the Circuit Court action. We, therefore, express no opinion as to when and if a stipulated settlement agreement such as the one involved in this case can be collaterally attacked on the basis of fraud or collusion.

5.  Did Taylor ask Tipton if there were any potential claims made under the old "claims made" policy of which the Lexington Insurance Company had not been informed and on which no lawsuit had been filed?

    _____X_____          _____

    Yes                    No

6.  Did Taylor tell Tipton about the availability of "tail coverage" which would protect Tip's Package Store, Inc., in the event that a claim was made after the "claims made" policy had expired?

    _____          ___X___

    Yes                    No

7.  Did Tipton and Tip's Package Store, Inc. receive the letter dated January 3, 1990 from Casey Jones Insurance Group (Exhibit Number 7)?

    _____X_____          _____

    Yes                    No

8.  By using the term "apples for apples," did Tipton mean that he wanted continuous insurance coverage with the same policy limits for liability as under the Lexington Insurance Company "claims made" policy?

    _____X_____          _____

    Yes                    No

Based on the jury's answers to the first two interrogatories, the Chancery Court concluded there had been no breach of contract. The Chancery Court also made a specific finding that the jury's answers to the fourth, fifth, and sixth interrogatories did not negate the affirmative finding in the third interrogatory upon which the finding of professional negligence was based. According to the Chancery Court, "Taylor's informing Tipton of the issuance of an 'occurrence' versus a 'claims made' policy, and his inquiry as to potential claims under the policy, would not prevent the jury from finding that Taylor did not make sure that Tipton knew and appreciated the

-18-

difference between the two policies." The Chancery Court further stated that the failure to advise of "tail coverage" would only "support the finding of the jury". In a subsequent opinion, the Chancery Court discussed the verdict, and found the jury "apparently believed that the definition submitted by defendants, that 'continuous coverage' meant coverage with no break in time, was all that was offered by the defendants and ultimately accepted by Tipton."

Litigants are entitled to have their rights settled by a consistent and intelligible verdict. *Milliken v. Smith*, 405 S.W.2d 475, 477 (Tenn. 1966). It is the duty of the appellate court to reverse and remand for a new trial when the verdict is inconsistent. *Id.* When determining whether a verdict is irreconcilable,

> It is the duty of the court in construing verdicts to give them the most favorable interpretation and to give effect to the intention of the jurors if that intention be permissible under the law and ascertainable from the phraseology of the verdict. If after an examination of the terms of the verdict the court is able to place a construction thereon that will uphold it, it is encumbent (sic) upon the court to do so.

*Hogan v. Doyle*, 768 S.W.2d 259, 263 (Tenn. Ct. App. 1988)(quoting *Templeton v. Quarles*, 52 Tenn. App. 419, 432, 374 S.W.2d 654, 660 (1963)).

We believe the Chancery Court properly reconciled any apparent inconsistencies in the jury's interrogatory answers. There certainly is sufficient evidence to support a finding that Taylor was negligent in not making sure Tipton appreciated the differences in the two types of coverage. Assuming this to be true, none of the jury's other responses to interrogatories negate this conclusion. For example, Taylor could have agreed to provide "continuous liquor liability coverage" with no break in time (as opposed to break in coverage) and have carried through with that promise, all the while being negligent in not making sure Tipton appreciated the differences in the two policies. We affirm the Chancery Court judgment as it gives effect to and reconciles any apparent inconsistencies in the jury's responses to interrogatories.

The final issues on appeal involve the amount of the judgment awarded to Plaintiffs. Both Plaintiffs and Defendants appeal the damage award. The "claims made" policy with Lexington had policy limits of $300,000. The "occurrence policy" with Great American had policy limits of $1,000,000. As set forth above, one of the interrogatories posed to the jury was as follows:

> By using the term "apples for apples," did Tipton mean that he wanted continuous insurance coverage with the same policy limits for liability as under the Lexington Insurance Company "claims made" policy?

The jury responded "yes." At trial, Tipton claimed he told Taylor that he wanted "apples for apples", meaning that he wanted the same insurance coverage with the same limits. Plaintiffs, however, did

-19-

not get "apples for apples" because what they got was an "occurrence" policy. Defendants argue that if Plaintiffs truly had received "apples for apples" as requested, they would have obtained a "claims made" policy in the amount of $300,000, as opposed to $1,000,000. Defendants thus claim that their maximum potential liability is $300,000, even though Plaintiffs paid for policy limits of $1,000,000 with Great American.

Plaintiffs argue that the full panoply of tort damages should be applicable and Defendants should be required to pay the full amount of the Circuit Court judgment against Tip's totaling $1,360,032.46 as indemnification for the negligence of Taylor. Intervening Plaintiff Jordan argues that prejudgment interest should accrue from the date of entry of the underlying judgment in Circuit Court. Tips' and Tipton adopted this argument and likewise request same.

At trial, Taylor testified that he did not want to make a proposal to Tipton based on the same amount of coverage that was in existence with the Lexington policy (i.e., $300,000). Taylor stated:

> I did not want to make a proposal on the same coverages that he had.
> If he wanted that, he was going to stay where he was. What I was
> trying to do was give him an alternative to the program that he
> currently had.

Taylor was successful in proposing a new alternative, including an increase in the policy limits to $1,000,000. Tipton consequently obtained a policy with this higher policy limits. Had Taylor not been negligent, Plaintiffs would have had a $1,000,000 policy which provided coverage for the wrongful deaths of Moberg and Jordan. We believe the Trial Court applied the proper measure of damages which fully compensates Tip's for the tortious injury, but no more. The award of $1,000,000 puts Tip's in the exact situation it would have been in if Taylor had not been negligent. At the same time, however, requiring Defendants to pay more than that which naturally flowed from the negligent conduct would be improper and result in a windfall to Tip's. For these reasons, we affirm the judgment of the Chancery Court in favor of Tip's in its award of $1,000,000 for indemnification against the judgment awarded to the Jordans and the Mobergs in the Circuit Court action.

As to Intervening Plaintiff Jordan's request for prejudgment interest, since Jordan was not awarded a judgment in this action, there is no basis upon which to grant this request. Tipton likewise is not entitled to prejudgment interest since we have reversed the judgment which was awarded to him. Even though we have rejected Defendants' attack on the validity of both judgments, we do not believe that the Chancery Court erred in its decision not to award prejudgment interest on this disputed amount.

## Conclusion

The judgment of the Chancery Court is reversed insofar as it awards a judgment to Plaintiff Tipton.  In all other respects, the judgment of the Chancery Court is affirmed.  This case is remanded to the Chancery Court for further proceedings as required, if any, consistent with this Opinion, and for the collection of costs below.  Costs of appeal are taxed one-half to Appellants, Commercial Insurance Managers, Inc., and George P. Taylor, IV, and their surety, and one-half to the Appellees Tip's Package Store, Inc., and H. Wayne Tipton.

_____
D. MICHAEL SWINEY