# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 28, 2014 Session

## JOY LITTLETON, ET AL. v. TIS INSURANCE SERVICES, INC.

**Appeal from the Circuit Court for Knox County**
**No. C-11-034211     Deborah Stevens, Judge**

---

### No. E2014-00938-COA-R3-CV-FILED-FEBRUARY 3, 2015

---

During a prior lawsuit, a construction company – in exchange for a covenant not to execute against the company's assets – assigned to the entity that obtained a judgment against it the company's insurance coverage claims. The plaintiffs in the previous action thereafter assigned those rights to the current plaintiffs to allow them to step into the shoes of the construction company and bring suit against the insurance broker. The trial court entered judgment on the pleadings in favor of the insurance broker on the ground that the current plaintiffs would not be entitled to recover any compensatory damages at trial. The plaintiffs appeal. We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., and NORMA MCGEE OGLE, SP. J., joined.

Robert B. Littleton, Nashville, Tennessee, and Robert R. Kurtz, Knoxville, Tennessee, for the appellants, Joy Littleton, Grayling Littleton, and Will Allen Hildreth, as assignees of Merit Construction, Inc.

Barry L. Howard, Nashville, Tennessee, for the appellee, TIS Insurance Services, Inc.

### OPINION

### I. BACKGROUND

The plaintiffs, Joy Littleton, Grayling Littleton, and Will Allen Hildreth ("the Assignees") were assigned a judgment and settlement order obtained by JAG Properties,

LLC ("JAG") against Merit Construction, Inc. ("Merit"). The current action arises as a result of a prior lawsuit, *JAG Properties, LLC v. Merit Construction, Inc., d/b/a Merit Construction, et al.*, No. 10296, Chancery Court of Loudon County, Tennessee ("the Merit Litigation"). The Merit Litigation arose out of a contract between JAG and Merit for the construction of a Holiday Inn Express hotel in Loudon, Tennessee. The litigation concerned claims by JAG of property damage to the hotel as a result of the negligent acts or omissions of Merit, the project architect, various subcontractors, and others in the construction of the hotel. A settlement agreement was entered into on October 19, 2004, by JAG and Merit for $3.9 million dollars. As a result of the settlement agreement, Merit consented to the entry of a judgment against it for $3.9 million and assigned to JAG all rights, causes of action, and other claims that Merit had or might have against Merit's insurers, Merit's broker, and Merit's agents arising from or in connection with the dispute between Merit and its insurers, broker, or agent. The judgment was entered on November 1, 2004.

The exact language of the covenant not to execute on the judgment is as follows:

6.  Upon entry of the consent judgment, JAG agrees not to execute against any assets (other than applicable insurance) of Merit or its successors and/or assigns in exchange for the assignment of all rights, claims, causes of action and demands that Merit has or might have against insurers that have provided policies of insurance that may provide coverage for the damages claimed in this action, as well as all other rights, causes of action and other claims that Merit has or might have against Highlands, AH, and Broker, their agents and representatives, and any other parties including those employed or hired by, acting in concert with or under the direction of Highlands, AH, and Broker, arising from or in connection with the Dispute and/or Litigation ("Merit Action") including but not limited to claims for the wrongful denial of coverage, violation of the Tennessee Consumer Protection Act, bad faith statute, common law bad faith, breach of contract, together with any other legal, equitable or contractual rights that Merit possesses or may possess against such parties arising from or in connection with the Merit Action. To the best of its knowledge, Merit was not presented with, and has not executed, any written acknowledgment or disclosure from Broker regarding the financial condition of Highlands and/or the risk associated with same at the time Broker placed Merit's primary and excess liability coverage with Highlands.

The settlement agreement further provides as follows:

11.    It is expressly understood and agreed by all parties to this consent judgment that the terms and provisions outlined herein shall not release or in any way be deemed or interpreted to release Merit, Highlands, AH, Broker and/or any other insurer that has issued a policy of insurance that may provide coverage for damages claimed in this action.

The final judgment references the settlement agreement between JAG and Merit and the covenant not to execute on the judgment as follows:

Whereas, Merit and JAG seek to conclude the Litigation and have entered into a settlement dated October 19 [handwritten in original], 2004 (the "Settlement Agreement") pursuant to which Merit has consented to the entry of a judgment against it and JAG has agreed to limit its collection efforts as set forth in the Settlement Agreement[;]

Now, therefore, in consideration of the foregoing premises, and because of the uncertainty of litigation, the additional expenses to be incurred and the anticipated value of the Claims, Merit and JAG agree to waive trial and to stipulate to the entry of a Final Judgment pursuant to the following terms:

1. Merit agrees to the entry of a judgment against it and in favor of JAG in the sum of 3.9 million dollars; and

2. JAG covenants not to execute against the assets other than insurance and claims assigned in the Settlement Agreement of Merit to satisfy the Final Judgment.

The trial court further provided:

ORDERED and ADJUDGED:

1.    Judgment is entered in favor of the Plaintiff, JAG Properties, LLC, and against Defendant, Merit Construction, Inc., on the admissions contained in the Joint Motion for Entry of Final Judgment filed by the parties in the amount of Three Million Nine Hundred Thousand Dollars ($3,900,000.00), which shall bear interest at the rate of ten percent (10%) from the date of entry of this judgment. Plaintiff shall not

collect and execute against Defendant, Merit Construction, Inc., to recover this judgment even if Plaintiff is unsuccessful in its attempts to collect and execute this judgment against other parties. Plaintiff may collect and execute this Final Judgment as provided in the Settlement Agreement between Plaintiff and Merit.

After entry of the judgment, JAG[1] was able to collect only a portion of its $3.9 million judgment against Merit because Merit's Commercial General Liability ("CGL") carrier, the Highlands Insurance Group ("Highlands"), was placed in receivership by the State of Texas during the pendency of the Merit Litigation. TIS Insurance Services, Inc. ("TIS") was Merit's insurance broker and the entity that placed Merit's CGL coverage with Highlands.

The current action was filed on January 28, 2011, seeking recovery from TIS of the unpaid balance of the judgment (approximately $2.67 million). The Assignees asserted four separate causes of action: 1) negligence; 2) fraud and intentional misrepresentation; 3) negligent misrepresentation; and 4) violation of the Tennessee Consumer Protection Act. In March 2012, TIS filed a motion for judgment on the pleadings, contending that the Assignees' damages were limited to the sum of $25,000 because

"Merit sustained $25,000 in actual compensatory damages since this is the amount paid to JAG to settle the Merit Litigation, and JAG agreed, pursuant to the Order and Settlement Agreement to not execute on the remainder of the $3.9 million judgment, even should JAG be unable to recover the excess from other parties."

On October 12, 2012, the trial court granted the motion and held "that the [Assignee]s' claim for compensatory damages which they may seek in the trial of this cause is limited to the $25,000 actually paid by Merit Construction in this matter."

The Assignees thereafter sought an interlocutory appeal, but this court denied the application in February 2013. The Assignees subsequently filed a motion to amend their complaint to assert the $25,000 payment made by Merit was not a payment on the judgment in the Merit Litigation. The trial court granted the motion to amend by an order entered in October 2013, and on April 21, 2014, amended its earlier partial judgment on the pleadings "to hold that the [Assignee]s will not be entitled to any compensatory damages at trial. Therefore, the Court hereby grants judgment on the pleadings in favor of the Defendant, TIS Insurance Services, Inc., and dismisses this cause with prejudice." The Assignees then filed this timely notice of appeal.

---

[1]The Assignees were the principals in JAG.

## II. ISSUE

The issue before us is whether the trial court erred in entering judgment on the pleadings in favor of TIS on the ground that the Assignees would not be entitled to recover any compensatory damages at trial.

## III. STANDARD OF REVIEW

The issue presented for review in this case is a question of law. Our review is therefore de novo without a presumption of correctness as to the resolution of the issue by the trial court. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

## IV. DISCUSSION

The trial court's ruling is directly contrary to our holding in *Tip's Package Store, Inc. v. Commercial Insurance Managers, Inc.,* 86 S.W. 3d 543 (Tenn. Ct. App. 2001), in which we held that a judgment creditor's covenant not to execute on a judgment debtor's assets does "not extinguish the underlying liability" of the judgment debtor for compensatory damages. The judgment debtor is "an injured party" that can pursue a negligence claim against its insurance provider for procuring a liability policy that allowed a gap in coverage. *Id.*, 86 S.W.3d at 555. In light of our decision in *Tip's*, JAG's covenant not to execute on the judgment against Merit does not extinguish the underlying liability of Merit under the judgment. Merit is an injured party because of the outstanding liability against which it sought to insure itself through TIS. If Merit can pursue a claim against TIS for the unpaid portion of JAG's judgment against Merit, that right can be assigned to JAG and JAG, likewise, can assign the right to the Assignees. *See* TNPRAC-RCP § 17:3 Assignees (stating "[a]n assignee is the real party in interest since the assignee not only possesses the right to be enforced, but also will ultimately benefit from the recovery. The assignee may sue in its own name.") (*citing V. L. Nicholson Co. v. Transcon Investment*, 595 S.W.2d 474, 481 (Tenn. 1980) (holding "JCLHC and Transcon executed an 'Assignment and Hold Harmless Agreement.' Assuming that this assignment is valid, and we have no reason to believe otherwise, Transcon has the right to assert JCLHC's claim as a counter-plaintiff and to appeal the dismissal of it."); *Ford v. Robertson*, 739 S.W.2d 3 (Tenn. Ct. App. 1987) (holding that "if Robertson was entitled to recover damages from the Architects for breach of contract that he could assign this right to plaintiffs and that they may enforce this right that Robertson previously possessed")).

Our holding is in agreement with the rule followed by most state courts – a covenant not to execute is "merely a contract and not a release." *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 534 (Iowa 1995). Covenants not to execute are different from releases, as the legal liability remains in force against those who have covenants, whereas a release represents "total freedom from liability." *Gray v. Grain Dealers Mut. Ins. Co.*, 871 F.2d 1128, 1133 (D.C. Cir. 1989). *See also Kobbeman v. Oleson*, 574 N.W.2d 633, 636 (S.D. 1998) (A covenant not to execute is "merely a contract, and not a release, such that the underlying tort liability remains and a breach of contract action lies in favor of the insured if the injured party seeks to collect his judgment."); *J & J Farmer Leasing, Inc. v. Citizens Ins. Co. of America*, 696 N.W.2d 681, 684 (Mich. 2005) ("A release immediately discharges an existing claim or right. In contrast, a covenant not to sue is merely an agreement not to sue on an existing claim. It does not extinguish a claim or cause of action."); *Stateline Steel Erectors, Inc. v. Shields*, 837 A.2d 285, 290 (N.H. 2003) ("Unlike a release, a covenant not to sue does not relinquish a right of claim, or extinguish a cause of action. A covenant not to sue recognizes the continuation of the obligation or liability; the party making the covenant not to sue agrees only not to assert any right or claim based upon the obligation."); *State Farm Mut. Auto. Ins. Co. v. Paynter*, 593 P.2d 948, 953 (Ariz. Ct. App. 1979) (finding a covenant not to execute is not a release from liability); *Miller v. Shugart*, 316 N.W.2d 729, 732 (Minn. 1982) (holding when an insured settles directly with the plaintiff, the plaintiff may seek to collect from the provider).

The Assignees, accordingly, are entitled to assert a claim against TIS for $2,701,607.67, the uncollected balance of the judgment against Merit.[2]

## V. CONCLUSION

The judgment of the trial court is reversed, and this cause is remanded for all further proceedings as may be necessary and consistent with this opinion. Costs of the appeal are assessed to the appellee, TIS Insurance Services, Inc.

_____
JOHN W. McCLARTY, JUDGE

---

[2]Merit would have had a CGL policy with coverage totaling $6 million available to it to satisfy the $3.9 million judgment of JAG had TIS not placed Merit's coverage with Highlands. Thus, the proper measure of damages is the full unpaid balance of the judgment against Merit.