

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-8-2003

# Sentinel Trust Co v. Unvrsl Bonding Ins C

Precedential or Non-Precedential: Precedential

Docket 02-1125

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Sentinel Trust Co v. Unvrsl Bonding Ins C" (2003). *2003 Decisions.* Paper 825.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/825

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed January 8, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1125

SENTINEL TRUST COMPANY,
        Appellant

v.

UNIVERSAL BONDING INSURANCE COMPANY; UNITED
STATES FIRE INSURANCE COMPANY; WESTCHESTER
FIRE INSURANCE COMPANY; and RICHARD
QUACKENBUSH,
        Appellees

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 01-cv-518 )
District Judge: Honorable Nicholas H. Politan

Argued November 1, 2002

Before: NYGAARD and WEIS, Circuit Judges, and
IRENAS,* District Judge.

Filed: January 8, 2003

        Keith J. Miller, Esquire (ARGUED)
        Robinson & Livelli
        Two Penn Plaza East
        Newark, NJ 07105

_____

* The Honorable Joseph E. Irenas, United States District Judge for the
District of New Jersey, sitting by designation.

        Ames Davis, Esquire
        Stanley Graham, Esquire
        Waller Lansden Dortch & Davis
        511 Union Street, Suite 2100
        Nashville, TN 37219

        Attorneys for Appellant
        Sentinel Trust Company

        Steven H. Rittmaster, Esquire
         (ARGUED)
        Mark S. Gamell, Esquire
        Torre, Lentz, Gamell, Gary &
         Rittmaster, LLP

        Mark S. Kundla, Esquire

Hardin, Kundla, McKeon, Poletto
 & Polifroni
673 Morris Avenue
Springfield, NJ 07081

Attorneys for Appellees
United States Fire Insurance
Company and Westchester Fire
Insurance Company

Andrew S. Kent, Esquire (ARGUED)
Gage Andretta, Esquire
Wolff & Samson, P.A.
5 Becker Farm Road
Roseland, NJ 07068

Attorneys for Appellee
Universal Bonding Insurance
Company

OPINION OF THE COURT

WEIS, Circuit Judge:

In this diversity case, an indenture trustee was denied
recovery from sureties on performance bonds. In part, the
District Court's ruling under Rule 12(b)(6) rested on
findings of fact unfavorable to the trustee in a related case.

2

We apply issue preclusion despite the fact that the earlier
judgment had been vacated as a term of settlement of that
case. Concluding that the District Court did not err in its
order of dismissal, we will affirm.

The plaintiff, Sentinel Trust Company, having its
principal place of business in Nashville, Tennessee, was the
indenture trustee for a series of corporate notes of
Transportation Leasing Corporation and Voyageur Lines,
Inc. issued to various investors. These notes were sold to
the public by a group including David Namer of Memphis,
with the representation that payments were guaranteed by
surety bonds.

Universal Bonding Insurance Company, an agency with
its principal place of business in New Jersey, and its vice-
president Richard Quackenbush, procured bonds from two
surety companies running in favor of Sentinel as trustee.
When defaults on the notes occurred, Universal and the
surety companies refused to honor claims against the
bonds. After it became known that Quackenbush had
participated with Namer in fraudulently issuing the bonds,
Universal agreed to indemnify the surety companies against
any loss.

Sentinel, as trustee and on behalf of the noteholders,
began litigation in 1997 against Universal and the sureties
in the United States District Court in New Jersey seeking to

compel payment of the bonds. While those actions were pending, Sentinel was removed as trustee by disgruntled noteholders and was replaced by Nevada State Bank, which succeeded to all rights and obligations under the indenture. In 1999, Nevada settled the suits in the New Jersey District Court for $3,585,000, an amount less than the full amount of the bonds.

On behalf of the noteholders, Nevada then joined in a pending action brought by other claimants in the Chancery Court for Davidson County, Tennessee, against Sentinel for derelictions it had committed as trustee. The complaint asserted claims for conversion, breach of fiduciary duty, breach of contract, and negligent management of the financing arrangement. In 1999, Sentinel joined Universal, the surety companies, and Quackenbush as third-party defendants in that litigation.

The Chancery Court filed extensive findings of fact and conclusions of law, and entered summary judgment for Nevada against Sentinel for an amount in excess of $2 million. Sentinel then dismissed without prejudice its complaint against third-party defendants, Universal and the surety companies.

After the judgment and dismissal, Nevada and Sentinel reached a settlement, one of whose terms was that the Chancery Court's judgment for damages would be vacated. On February 21, 2001, the Chancery Court signed a consent order vacating its judgment. Universal and the surety companies were not parties to that order.

Before the vacatur was actually docketed, Sentinel filed a complaint against Universal, the surety companies, and Quackenbush on February 1, 2001 in the District Court for the District of New Jersey. The complaint recited allegations essentially the same as those contained in the third-party complaint Sentinel had previously filed in the Tennessee Chancery Court. Sentinel sought damages in the form of litigation expenses incurred in the Chancery suit, reimbursement of the amounts it paid in the settlement, as well as damages for breach of contract and statutory causes of action under Tennessee law.

Relying on Tennessee law, the District Court dismissed the complaint under Fed. R. Civil Procedure 12(b)(6). The Court denied the contract claims because Sentinel was no longer a trustee, and the obligations on the surety bonds were not owed to it personally. Sentinel was viewed as a mere "incidental beneficiary" and, as such, it"had no standing to sue for any alleged breach or inducement to breach obligations on the bonds."

The indemnification count was rejected based on the findings of the Tennessee Chancery Court that Sentinel was "liable for its negligent acts." Finally, the Court noted that Nevada, as successor trustee, had released Universal and

the surety companies from all claims of the noteholders. Although Sentinel asserted that the consideration for the release was inadequate, the Court ruled that the amount paid was sufficient.

Sentinel has appealed, asserting that the District Court misconstrued its claims for breach of contract and inducement of breach, as well as improperly relying on the findings of fact underlying the vacated judgment in dismissing the indemnity claim. Rejection of the statutory claims arising under Tennessee law is also alleged to be erroneous.

We have jurisdiction under 28 U.S.C. S 1291. Our review of the District Court's rulings is plenary. Maio v. Aetna Ins. Co., 221 F.3d 472, 481 (3d Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), the court must accept the facts set out in the complaint. However, a defendant may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff 's claims. Pittsburgh v. West Penn Power, 147 F.3d 256, 259 (3d Cir. 1998); ALA v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Pension Benefit Guar. Co. v. White Consol. Indus. , 998 F.2d 1192, 1196 (3d Cir. 1993). Our review, as well as the District Court's ruling, includes consideration of such documents.

I. Breach of Contract

Sentinel's claim for breach of contract against Universal and their sureties is based upon their refusal to honor their obligations to guarantee payment of the TLC and Voyageur notes. Sentinel originally made these assertions in the District Court as trustee on behalf of the noteholders. When Nevada succeeded Sentinel as trustee, and settled the noteholders' claims against Universal and the sureties, it reserved the right to proceed against Sentinel, and did so in the Tennessee Chancery Court.

Ultimately, Sentinel paid a substantial sum to Nevada as incumbent trustee in settlement of the Tennessee action. It is that settlement amount and the expenses associated with it that Sentinel seeks to recover here against defendants Universal and the sureties.

Sentinel argues that if Universal and the sureties had paid the full amount of the bonds, either upon demand or

in settlement of the original suit by Nevada, then the noteholders would have had no damages to assert in the Chancery suit. Consequently, Sentinel would, in effect, have been immunized. This scenario is implicitly based on

the proposition that the sureties could not have invoked Sentinel's derelictions as a defense on the bonds. Such a contention is dubious at best.

Basic tenets of suretyship may protect a surety from responsibility when the obligee bears fault for the loss. An obligee must act with diligence in transactions with the principal, and must have appropriately performed its contractual obligations in order for the principal and surety to be liable. See M. Michael Egan & Marla Eastwood, "Discharge of the Performance Bond Surety" in The Law of Suretyship 119 (Edward G. Gallagher ed., 2d ed. 2002).

A substantial difference exists between contracts of indemnity and those of suretyship. An indemnity policy undertakes to protect a promisee against loss because of his own liability to a third person. The undertaking of a surety, on the other hand, is intended to protect the promisee against loss through failure of a third person to carry out his obligation to the promisee.

In certain circumstances, a surety may be released from its obligations when derelictions by the obligee brought about the loss. Under Tennessee law, a compensated surety is entitled to be relieved to the extent of the loss actually caused by breach of an obligee's duty. Central Towers Apartments, Inc. v. Manton, 453 S.W.2d 789, 796-97 (Tenn. Ct. App. 1969).

Here, the District Court pointed out that the bonds were not issued to Sentinel personally, but only in its capacity as trustee. See Rest. (2d) of Trusts, S 196, comment g (1959) (stating that "all powers of a trustee shall be attached to the office and shall not be personal") (citing Uniform Trusts Act, S 10). When Nevada replaced Sentinel as trustee, the surety's obligations were transferred to Nevada as the representative of the noteholders.

The Court further observed that Sentinel, as trustee and thus a mere agent, was not entitled to a portion of the bond proceeds. Rather, the obligations were owed to the office of

6

trustee, making Sentinel only an incidental beneficiary. The fact that Sentinel was entitled to compensation for its work as trustee in administering the financial arrangements did not confer standing to sue on its own behalf for breach or alleged inducement to breach the bond agreement. Under Tennessee law, only intended beneficiaries of a contract, and not incidental beneficiaries, may recover for a breach.

In Abraham v. Knoxville Family Television, Inc. , 757 S.W.2d 8 (Tenn Ct. App. 1988), the Court concluded that plaintiffs are considered to be incidental beneficiaries if they cannot show that the contract was intended for their direct benefit. The Tennessee Supreme Court held in Willard v. Claborn, 419 S.W.2d 168 (Tenn. 1967), that an agent could not maintain a breach of contract suit without

a special interest or property interest in the subject matter of the contract. Right to a commission does not amount to such a property interest, and as a mere incidental beneficiary to a contract, an agent could not recover upon a breach of contract, nor on the tort of inducing a breach.

We are persuaded that these cases set out the Tennessee law applicable to this case, and therefore, the District Court did not err in denying Sentinel's claims of a breach of contract and inducement to breach a contract.

II. Indemnity

Sentinel also asserts that under either implied contractual or equitable theories of indemnification, it is entitled to recover the sums it expended in settlement of the Chancery suit. As Sentinel sees it, Universal and the surety companies conspired with Quackenbush to deprive the noteholders of protection from nonpayment and should be liable for the full amount of the loss.

Upon examination of the record, however, it seems that Quackenbush did not defraud the noteholders, but rather the surety companies in causing them to write the bonds without the customary collateral. The liability for this fraud appears to have been resolved when Universal agreed to indemnify the surety companies, and in accordance with that arrangement paid a substantial sum on the noteholders claims. Thus, Quackenbush's fraud became

irrelevant to the noteholders' interest once Universal took control of the litigation against the sureties and assumed their liabilities.

Tennessee law on indemnity is summarized in the frequently cited Winter v. Smith, 914 S.W.2d 527 (Tenn. Ct. App. 1995). The concept relies on two principles-- that all should be responsible for their own derelictions and, therefore, wrongdoers should be liable to persons who are required to pay damages that the wrongdoers should have paid. "Indemnification requires the complete shifting of liability for loss from one person to another." Id. at 541.

Implied indemnity obligations may be equitable or contractual and are imposed by law. Indemnity will be enforced when the obligation is a necessary element in the parties' relationship or where fairness "demands that the burden of paying for the loss be shifted to the party whose fault or 'responsibility is qualitatively different from the other parties.' " Velsicol Chem. Corp. v. Rowe, 543 S.W.2d 337, 339 (Tenn. 1976) (qualitatively, e.g., as in the active and passive negligence sense).

In Southern Coal & Coke Co. v. Beech Grove Mining Co., 381 S.W.2d 299, 302 (Tenn. Ct. App. 1964), the Court held that one who has discharged the duty owed by another is entitled to indemnity "unless the payor is barred by the

wrongful nature of his conduct." (citing Rest. of Restitution, S 76). Further discussion of indemnity under Tennessee law may be found in Owens v. Truckstops of Am., 915 S.W.2d 420, 434 (Tenn. 1996); Houseboating Corp. Of Am. v. Marshall, 553 S.W.2d 588 (Tenn. 1977).

It appears that, under general principles of indemnity followed in Tennessee law, a party may not shift the full burden through indemnity, either contractual or equitable when it is responsible for its own negligence or wrongful conduct in connection with the claimed loss.

In the case at hand, the District Court observed that "there was a finding by a Tennessee state court that Sentinel was liable for negligent acts . . . . Although that finding was apparently later vacated, Sentinel voluntarily entered into a settlement agreement, after a finding of liability against it was made . . . ." Sentinel insists that the

8

District Court's reliance on the vacated judgment constitutes reversible error.

The chronology of the Tennessee proceeding is important in understanding the nature of the issue. As noted earlier, Nevada Bank, on behalf of the noteholders, joined in a suit previously filed by other entities against Sentinel in the Chancery Court of Davidson County, Tennessee.

The Chancery Court filed extensive findings of fact and conclusions of law on August 16, 2000, and, on August 24, 2000, entered judgment in favor of Nevada Bank and against Sentinel in an amount in excess of $2 million. No findings were made as to Universal and the sureties as third-party defendants. Some months later, on December 6, 2000, Sentinel took a voluntary non-suit, without prejudice, dismissing the third-party claims against Universal and the sureties. They did not consent to nor contest the motion at that time.

Nevada Bank and Sentinel then settled and agreed to a vacatur of the judgment. In accordance with a stipulation, the Chancery Court on February 21, 2001 filed an order stating:

"(1) the judgment rendered against Sentinel pursuant to this court's order dated August 24, 2000 is hereby vacated;

(2) plaintiffs' complaint, including all amendments thereto, is hereby dismissed with prejudice."

The vacation of the Chancery Court judgment is an accomplished fact that is beyond our review at this point. Nevertheless, it does have some bearing on the question that remains: whether preclusive effect is to be given to the findings of fact underlying that judgment.

In resolving that issue it is helpful to review the use of a

stipulation to vacate a judgment as a condition of settlement between the parties. This practice has been a controversial subject for some years. The arguments pro and con have centered upon whether the practice helps or hinders settlements and whether the public interest and rights of third-parties may be affected. Not surprisingly, the

debate has been the focus of extensive academic commentary.[1]

In appraising the practice, we initially look to Tennessee law to the extent that it furnishes guidance. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); In re Brown, 951 F.2d 564, 568-69 (3d Cir. 1991). However, none of the parties to this appeal nor our independent research has directed us to any Tennessee appellate cases that discuss the validity of vacatur on stipulation of the parties.

Having failed to find any guiding state law, we turn to federal appellate decisions for general principles that may serve to aid our "prediction" on how the highest court in Tennessee would resolve the issue. In view of the continuing controversy over the matter, it is not unexpected to find that the federal courts have not been in agreement.

The Court of Appeals for the Seventh Circuit has been firmly opposed to approving settlements that include as a condition that the district court judgment be vacated. In re Mem'l Hosp., 862 F.2d 1299 (7th Cir. 1988). The Second Circuit, once routinely permitted expungements as part of a settlement, Nestles Co. v. Chester's Mkt., 756 F.2d 280 (2d Cir. 1985), but later changed course in concluding that mere settlement is not sufficient to justify recision of a judgment. Bristol Tech. v. Microsoft, 250 F.3d 152 (2d Cir. 2001).

_____

1. See, e.g., Jill E. Fisch, Reinventing History; the Propriety of Eradicating Prior Decisional Law Through Settlement and Vacatur , 76 Cornell L. Rev. 589 (1991); Judith Resnik, Whose Judgment? Vacating Judgments, Preferences for Settlement and the Role of Adjudication at the Close of the Twentieth Century, 41 UCLA L. Rev. 1471 (1994). Note, The Benefits of Applying Issue Preclusion to Interlocutory Judgments in Cases that Settle, 76 NYU L. Rev. 874 (2002); Note, Settlement Pending Appeal: An Argument for Vacatur, 58 Fordham L. Rev. 233 (1989); Note, Avoiding Issue Preclusion by Settlement Conditioned Upon the Vacatur of Entered Judgments, 96 Yale L. J. 860 (1987). Note, Erasing the Law, The Implications of Settlements Conditioned upon Vacation of Reversal of Judgments, 50 Wash. & Lee Law Rev. 1229 (1993). Note, Unsettling Settlements; Should Stipulated Reversals be Allowed to Trump Judgments' Collateral Estoppel Effects Under Neary, 85 Cal. L Rev. 479 (1997).

In Nat'l Union Fire Insur. Co. v. Seafines Corp. , 891 F.2d

762, 765 (9th Cir. 1989) (citing Ringsby Truck Lines, Inc. v. Western Conference of Teamsters, 686 F.2d 720, 722 (9th Cir. 1982), the Court of Appeals for the Ninth Circuit held that the decision to grant vacatur requires the district court to weigh the balance between the "competing values of finality of judgments and right to relitigation of unreviewed disputes." We have voiced our opposition to settlements conditioned on nullification of judgments for money damages, see Clarendon v. Nu-West Indus., 936 F.2d 127 (3d Cir. 1991), but have permitted the practice when the trial court's injunctive order imposed a legal bar to settlement. Orocare D.P.O., Inc. v. Merin, 972 F.2d 519, 522 (3d Cir. 1992).

Much of the controversy was resolved by the Supreme Court in U.S. Bankcorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18 (1994). In that case, the Court phrased the issue before it as "whether appellate courts in the federal system should vacate civil judgments of subordinate courts in cases that are settled after appeal is filed or certiorari sought." Bonner Mall, 513 U.S. at 19. The Court's answer, in a unanimous opinion, might fairly be stated as"generally no."

The Court discussed the "equitable entitlement to the extraordinary remedy of vacatur," and acknowledged that a party's "voluntary forfeiture of review constitutes a failure of equity." Id. at 26. The Court also recognized the public interest in judicial precedents that are "presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." Id .

The authors of a leading treatise had taken the position that the parties should be free to settle pending appeal on terms that require vacation of a district court judgment. However, "this view has been emphatically rejected by the Supreme Court" in Bonner Mall. Wright, Miller & Cooper, 13 Fed. Prac. & Proc., S 3533.10 (2001).

Bonner Mall, by its terms, is limited to the federal court system and, therefore, is not directly applicable to state

11

courts. Nevertheless, a unanimous opinion by the Supreme Court of the United States does have force and furnishes philosophical guidance for resolution of similar situations in the state courts. See, e.g., Comm'r of Motor Vehicles v. Demilo & Co., 659 A.2d 148, 157-58 (Conn. 1995); Paramount Comm. v. Gibralter Cas. Co., 623 N.Y.S.2d 850 (App. Div. 1995).

Because the Chancery Court's vacatur is a fait accompli at this stage, the more immediate question for us is whether the Supreme Court of Tennessee would apply preclusive effect to the findings underlying the vacated judgment. We have found no Tennessee law on point and,

therefore, we must look to general principles of issue preclusion to aid in our prediction.

In Beaty v. McGraw, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998), the Court explained that issue preclusion is designed "to conserve judicial resources," and "relieve litigants from the cost and vexation of multiple law suits." The doctrine bars the same parties or their privies from relitigating in the second suit issues that were actually raised and determined in an earlier case. Id.

Under Tennessee law, the party invoking issue preclusion must demonstrate that: (1) the precluding issue is identical to that decided in the earlier suit; (2) that the issue was actually litigated and decided on the merits; (3) that the judgment in the earlier suit has become final; (4) that the party against whom preclusion is asserted was a party or in privity in the earlier suit; and (5) that the party had a full and fair opportunity to litigate the issue. Id . at 824-25.

Issue preclusion, when used by the defendant in the second suit, does not require party mutuality, Trinity Indus. v. McKinnon Bridge Co., 77 S.W.3d 159, 185 (Tenn. Ct. App. 2001), so long as the issue sought to be precluded is identical in both cases. The concept of privity in this context pertains to the subject matter of the litigation, not to the relationship between the parties themselves. Privity connotes an identity of interest and depends on the facts of each case. Chilar v. Crawford, 39 S.W.3d 172, 181 (Tenn. Ct. App. 2000).

12

Here, the matters sought to be precluded from further litigation are Sentinel's negligent conduct and failure to properly satisfy its fiduciary obligations. There is no doubt that these issues were actually litigated and decided on the merits, as memorialized by the Chancery Court's findings of fact and conclusions of law. Sentinel was a party to that suit and had a full and fair opportunity to defend itself.

That leaves for discussion only the question of whether the judgment of the Chancery Court was "final," or rephrased in the circumstances here, whether the vacatur should be narrowly construed so as to grant validity to the findings of fact. The concepts of equity and fair dealing enter into this determination.

As the Court acknowledged in C.O. Christian & Sons, Inc. v. Nashville P.S. Hotel, 765 S.W.2d 754, 756 (Tenn. Ct. App. 1989), "[t]he cases do not provide much guidance, however on the issue of what constitutes a final judgment for purposes of collateral estoppel . . . the principles governing the meaning of final judgment for purposes of appeal may differ from those relevant for purposes of collateral estoppel." In Richardson v. Tennessee Bd. of Dentistry, 913 S.W.2d 446 (Tenn. 1995), the judgment was considered final when the chancellor's memorandum and order conclusively determined all issues and left nothing for

further adjudication. Although helpful, these broad propositions do not answer the question of whether the findings of fact may be invoked when the judgment is vacated by consent.

Our review of the opinions of the Tennessee appellate courts reveals many instances where the Restatement of Judgments (Second) is cited with approval. We have not encountered any Tennessee case that refers to section 13 of that Restatement, but in light of C.O. Christian & Sons, we think that in an appropriate setting, that section would be cited as reflecting Tennessee law.

Section 13 of the Restatement of Judgment (Second) provides that ". . . for purposes of issue preclusion . . . , 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be given preclusive effect." Any other interpretation could

13

lead to "needless duplication of effort and expense in the second action to decide the same issue." See comment g. See also Lummus v. Commw. Oil & Refining Co., 297 F.2d 80, 87 (2d Cir. 1961); In re Brown, 951 F.2d at 596.

In Employees Own Fed. Credit Union v. City of Defiance, 752 F.2d 243 (6th Cir. 1985), a state trial court entered findings of fact and conclusions of law adverse to the plaintiff Credit Union, but allowed it to file an amended complaint within 20 days. Before the expiration of that period, the Credit Union voluntarily dismissed the actions without prejudice and a few days later filed the same claim in federal court. The Court of Appeals held that the state court decision embodying findings of fact and conclusions of law was sufficiently firm to be accorded preclusive effect.

Similarly, in Birgel v. Bd. of Comm'rs of Butler County, 125 F.3d 948 (6th Cir. 1997), the Court said that ordinarily collateral estoppel requires a final judgment. However, the plaintiff 's voluntary dismissal of a claim after it had been remanded by the state appellate court for further proceedings in the state trial court barred relitigation of the same claim in federal court. The order of the state court had been sufficiently firm, even in the absence of a formal judgment, to allow preclusion. "We will not permit a plaintiff to abandon his failing state court suit and file a virtually identical suit in federal court in hopes of achieving a more favorable result." Id. at 952.

Other courts have also adopted this position on finality in the collateral estoppel context. In Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149 (5th Cir. 1983), vacated on other grounds, 460 U.S. 1007 (1983), the Court applied issue preclusion even though the trial court had vacated a judgment as a condition of settlement. 2 See also Bates v. Union Oil Co., 944 F.2d 647 (9th Cir. 1982); John Morrell v. Local Union, 913 F.2d 544 (8th Cir. 1990); O'Reilly v. Malon, 747 F.2d 820 (1st Cir. 1984).

2. Chemetron has had a somewhat checkered career in the Fifth Circuit.
It was criticized in Avondale Shipyards v. Insured Lloyd's, 786 F.2d 1265
(5th Cir. 1986), and J.R. Clearwater Ashland Chem. v. Ashland Chem.,
93 F.3d 176 (5th Cir. 1996). However, it was cited in Cycles Ltd. v.
Navisteer Fin. Corp., 37 F.3d 1088 (5th Cir. 1994).

Taking guidance from these general principles, we first
observe that the Chancery Court's order did not purport to
expunge the findings of fact and conclusions of law.
Contrast the silence of the Tennessee Court's order on that
point with that in Harris Trust & Sav. Bank v. John
Hancock Mut. Life Ins., 970 F.2d 1138 (2d Cir. 1992), where
preclusion was denied. In that case, the first court's order
directed that "the order, together with the findings and
conclusions embodied therein, is . . . vacated, and shall be
of no force or effect against the defendant by . . . third
parties for collateral estoppel or other preclusive purposes."[3]
Id. at 1146. The Chancery order in this case contains no
such language, but merely states that the "judgment" is
vacated.

Next, we note that the judgment and findings of fact
against Sentinel were entered by the Chancery Court
during the time when Universal was a third-party
defendant. This being so, Sentinel could and should have
litigated its claims in the Chancery Court. Consequently,
whatever force the arguments against non-mutual estoppel
might have is not implicated here. Although not specified as
applicable to the third-party proceedings, the findings of
fact were of obvious benefit to Universal in its defense of
Sentinel's complaint against it.

No doubt because of the disadvantageous position in
which the findings had placed it, Sentinel unilaterally took
a voluntary non-suit without prejudice against Universal,
an action to which it did not consent. Tennessee Rules of
Civil Procedure 41.01 provides that a plaintiff may take a
voluntary non-suit "at any time before the trial of a cause
. . . or by oral notice 'in open court during the trial of a
cause; or in jury trials at any time before the jury retires to
consider its verdict and prior to the ruling of the court
sustaining a motion for a directed verdict.' " Rule 41.03
extends that rule to cover the "dismissal of . . . third-party
claims."

Our reading of the Tennessee procedural rules leads us
to question whether Sentinel had the right to dismiss

without prejudice when the Chancellor had already entered findings of fact and judgment against it. We may not review the validity of the non-suit because at this point it is not subject to reversal by federal courts. However, the dismissal of the third-party complaint at that stage and subsequent filing of essentially the same document in the New Jersey District Court is a flagrant instance of forum shopping.

Based on the proceedings to that point, Sentinel apparently believed its chances of success in the third party action against Universal in the Chancery Court were dim and decided to try another forum. This is an example of the unnecessary duplication of litigation that the doctrine of issue preclusion is designed to prevent. The circumstances are quite similar to those in Employees Own Fed. Credit Union v. City of Defiance, 752 F.2d 243 (6th Cir. 1985), where the Court applied res judicata to findings of fact that were entered before the plaintiff took a voluntary dismissal. According to the Court, "we see no reason to allow a party to get an adverse judgment in state court and turn around and sue on the same claim in federal court. One bite at the apple is enough." Id. at 245.

Moreover, as noted above, concepts of equity and fair dealing come into play. Sentinel's tactics were carefully timed. When it presented the motion to vacate the judgment, Universal was no longer a party to the Chancery suit, and the vacatur was thus unopposed. It is also interesting that Sentinel filed the action in the federal court in New Jersey before the vacation order was entered by the Chancery Court. At the time the litigation was commenced in New Jersey, therefore, a final judgment had been entered against Sentinel and findings of fact underlying that judgment were in full force and effect.

We are persuaded that in view of all the circumstances here, if the case were submitted to the Supreme Court of Tennessee, it would apply issue preclusion.

The Chancery Court found that Sentinel breached its obligations to the noteholders in a number of respects, including failure to ensure that the security interests in the collateral were perfected, allowing collateral to be improperly sold and transferred out of trust, failing to

16

collect loan payments from the notemakers, failing to make timely demands on the sureties, and making improper investment of funds entrusted to it. These findings of fact established violations of Sentinel's obligations as trustee and serve as a defense to the indemnity claim.

The District Court correctly ruled that Sentinel was not entitled to indemnity in these circumstances.

III. The Tennessee Consumer Protection Act

Sentinel also asserts a claim under the Tennessee

Consumer Protection Act. Tenn. Code Ann. S 47-18-104 to 109. That statute prohibits unfair or deceptive acts or practices affecting the conduct of any trade or business, including the practices of insurance companies. Sentinel contends that the issuance of the performance bonds fell within the purview of the Act. We need not discuss the merits of this claim, because it is time barred.

Tenn. Code Ann. S 47-18-110 provides that a cause of action under the Act "shall be brought within one year from a person's discovery of the unlawful act or practice, but in no event shall an action under Tenn. Code Ann. S 47-18-109 be brought more than four years after the date of the consumer transaction giving rise to the claim for relief." The bonds were issued in February and November 1994, and according to the findings of fact in the Tennessee Chancery Court, the default occurred in 1997.

Defendants acknowledge that the "discovery of the unlawful act or practice" may be considered to have been established as of September 1, 1998, when a complaint averring fraud against Namer, Quackenbush, and Universal was filed in the United States District Court for the Western District of Tennessee. However, the action before us was not commenced until February 1, 2001. Under the one year limitation period, Sentinel's claim is barred.

Sentinel argues that the claim was timely under the Tennessee "saving statute." Tenn. Code Ann.S 28-1-105(a). This provision permits an otherwise untimely claim if it was originally commenced within the statutory period, was subject to disposition "against the plaintiff upon any

17

ground not concluding the plaintiff 's right of action," and thereafter commenced within one year of that disposition. However, Sentinel's argument is unavailing. Its claims under the Act were originally asserted against the defendants in the third party complaint in the Tennessee Chancery action, filed on December 6, 1999. Under the date fixing the "discovery of the unlawful act or practice," that action is also beyond the one year limitation period.

Accordingly, the judgment of the District Court will be affirmed.4

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

_____

4. The District Court included Defendant Quackenbush it its Order granting defendants' motion to dismiss. We find no error in this determination, and affirm the District Court's Order in its entirety.

18